State ex rel. Thomas v. Trimble.

●

---

THE STATE ex rel. MARY E. THOMAS v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals.

In Banc, March 22, 1924.

1. **INSURANCE**: Hazardous Employment: Acceptance of Dues: Waiver and Estoppel. Where the by-laws and certificate of a fraternal beneficiary association provided that the insurance should become void if the insured engaged in occupations named in the by-laws as hazardous, and the by-laws named the occupation of an electric lineman as hazardous, and the insured died from an electric shock while at work as a lineman, the Court of Appeals did not contravene any decision of the Supreme Court in ruling that the fact that he was assured by the association's officers that if he came to his death while engaged in such hazardous occupation his policy would be paid, and that after receiving such assurance he continued to pay his assessments regularly and the association received them, did not amount to either waiver or estoppel, since the insured knew that the contract avoided the policy if he came to his death while so engaged, but recognized his right to engage in all non-hazardous employments, and for that reason the association had no right to cancel his policy or refuse the premiums, and the

State ex rel. Thomas v. Trimble.

representations did not relate to an abandonment of an existing contract, but merely to a promise for the future. The Supreme Court has never ruled that, under such circumstances, the prohibition against hazardous employment was waived by such assurance, or that by accepting the premiums the association was estopped to assert that its liability to pay the insurance ceased upon a showing that the insured came to his death while at work in such hazardous occupation.

2. ———: **Poisonous Gas: Question of Fact.** The Court of Appeals did not contravene any decision of the Supreme Court in ruling that whether the insured died from the effect of phosgene gas poisoning while a soldier in France, or whether he died from contact with a wire carrying a heavy voltage of electricity which he as a lineman was attempting to repair when he fell from the pole to which it was attached, was an issue of fact, to be determined by the trial court sitting as a jury, and that the finding that he came to his death from the electric shock, being supported by substantial evidence, must on appellate review be taken as true.

3. ———: **Hazardous Occupation: Waiver and Estoppel.** The Supreme Court has never ruled that a statement made by a general agent of an insurance company, to one of its policyholders, expressing an opinion as to the legal effect of the provisions of the holder's policy, was, absent fraud, binding on the company, either as an admission or on the ground of estoppel.

Headnote 1: **Mutual Benefit Insurance,** 29 Cyc. 191. Headnote 2: **Appeal and Error,** 4 C. J. secs. 2538, 2853. Headnote 3: **Mutual Benefit Insurance,** 29 Cyc. 191; **Estoppel,** 21 C. J. secs. 134, 151.

## Certiorari.

PRELIMINARY WRIT QUASHED.

*Lyons & Ristine* for relator.

(1) The district deputy head consul of the defendant insurance company had authority to waive provisions of the policy and by-laws of the society and in this case did waive such provisions, and the Court of Appeals erred in holding that the trial court should not have granted a new trial because such evidence was excluded. McMahon v. Maccabees, 151 Mo. 522, 537; Mathews v.

Modern Woodmen, 236 Mo. 326, 343; Mining & Milling Co. v. Fire Insurance Co., 267 Mo. 524, 602; Nickell v. Insurance Co., 144 Mo. 420; Thompson v. Traders Insurance Co., 169 Mo. 12, 23; Springfield Steam Laundry Co. v. Ins. Co., 151 Mo. 90, 99; Rissler v. Insurance Co., 150 Mo. 366, 375. (2) If a new trial should have been granted for any reason other than the reason assigned by the trial court the Court of Appeals should have sustained the action of the trial court. Said Court of Appeals was in error when it held that the finding of the trial court on the motion for new trial was conclusive as to them. Saving Bank v. Denker, 275 Mo. 607, 623; Higgins v. Higgins, 243 Mo. 164, 171; Thompson v. Street Railway Co., 140 Mo. 125, 142. (3) The Court of Appeals and trial court erred in not sustaining motion for new trial because trial court excluded evidence of many witnesses who would have testified that district deputy head consul had made statements over a period of fifteen or twenty years, leading its members to believe that insurance company did not require them to live up to the rules and by-laws and policy provisions in relation to prohibited and hazardous occupations. The insurance company, by long use and custom and statements and long course of action, is estopped from interposing defenses, which by said usages and customs and dealings have led its members to believe would not be insisted upon. McMahon v. Maccabees, 151 Mo. 522, 540; Mining & Milling Co. v. Fire Ins. Co., 267 Mo. 524; Thompson v. Traders Ins. Co., 169 Mo. 12, 23. (4) Knowledge of the district deputy head consul was knowledge of the head consul, the chief officer of the company, so that the insurance company's chief officers knew of the work insured was engaged in for two years prior to his death, and with full knowledge of such facts continued to accept and retain dues and assessments and are now obliged to pay said insurance, and said Court of Appeals should have sustained the trial court's action for that reason. Sec. 6418, R. S. 1919; Thompson v. Traders'

Ins. Co., 169 Mo. 12; Rissler v. Ins. Co., 150 Mo. 366, 375; McMahon v. Maccabees, 151 Mo. 522, 540.

*Truman Plantz, Horace F. Blackwell* and *Barbour & McDavid* for respondents.

(1)   In this character of proceeding, this court does not go into the merits of the case as the same were presented to respondents, but is concerned solely with the question of conflict, and will look to the opinion of the Court of Appeals for a statement of the facts. State ex rel. Mo. State Life Ins. Co. v. Allen, 243 S. W. 841; State ex rel. Continental Insurance Co. v. Reynolds, 235 S. W. 90; State ex rel. Nafziger Baking Co. v. Trimble, 247 S. W. 147; State ex rel. Am. Packing Co. v. Reynolds, 287 Mo. 697, 710.   (2)   Whether the deputy head consul had authority to waive the provisions of the benefit certificate and the by-laws of the society, depends on his powers, real or apparent. Whether he did in the instant case do or say anything which would have the effect to waive a defense or estop the society from making a given defense, depends on the character of the act or statement proved or sought to be proved. Respondents held, assigning their reasons therefor, that such statements did not have the effect to create either waiver or estoppel. The statements made, as the offer to prove shows, when analyzed and boiled down, consisted solely of an expression of opinion as to what might be done in the future; an opinion as to the law governing a contract; a forecast as to what would occur in the future. The Supreme Court has never held, under the facts here or under any similar state of facts, contrary to the rule laid down on this point by the Court of Appeals in this case. On the other hand, this court, long years ago, announced a doctrine squarely in line with that declared by the Court of Appeals in this case: Hammerslough v. Loan Association, 79 Mo. 80.   (3) The new trial in this case was granted on the ground that: "The court erred in sustaining defendant's ob-

jection to plaintiff's offer to prove that defendant waived assured's engaging in such occupation." By sustaining said motion on this ground it overruled such motion as to all other grounds, and this included the ground that the judgment was against the weight of the evidence. Thiele v. Citizens Ry. Co., 140 Mo. 319, 335; Ittner v. Hughes, 133 Mo. 688. (4) It makes no difference as to the knowledge of the officers of defendant society concerning the acceptance and retention of dues and assessments. Under the terms of the contract it was their duty to receive such dues and assessments and Thomas had the right to compel them to receive them. He had the right to engage in this hazardous occupation and could not be prevented by any of these officers from doing so. They had no control over him in that regard. He was engaging in an occupation in which he had a right to engage, and hence since there is no power to suspend him, there could be no waiver in not suspending him. He was insured against the same risks, in the same amount and at the same cost from the beginning to the end. This court has never held to the contrary. To the same effect is the case of Williams v. Modern Woodmen, 243 S. W. 272. See also Frain v. Modern Woodmen, 61 Colo. 27; Showalter v. Modern Woodmen, 156 Mich. 390; Modern Woodmen of America v. Weekley, 42 Okla. 25; Ridgeway v. Modern Woodmen, 98 Kan. 240; Modern Woodmen of American v. Talbot, 76 Neb. 621; Crites v. Modern Woodmen, 82 Neb. 298; Miller v. Life Association, 212 S. W. 310.

RAGLAND, J.—Relator seeks to have quashed the judgment of the Kansas City Court of Appeals, in the case of Mary B. Thomas, Respondent, v. Modern Woodmen of America, Appellant, rendered at its March term, 1922, on the ground, as she alleges, that the decision upon which it is based is in conflict with previous decisions of this court. The facts involved and the ruling with respect thereto fully appear from the opinion of the court which is as follows:

"This is an action upon death benefit certificate in the sum of $2000 issued by defendant, a fraternal benefit society, upon the life of Charles Homer Thomas in favor of his mother, the plaintiff herein, as beneficiary. The insured died on the 17th day of June, 1919, as the result of an electric shock and burn received while he was engaged in the occupation of an electric lineman and working for the Missouri Gas & Electric Service Company at Liberty, Missouri. Defendant refused to pay the amount of the policy, and plaintiff brought this suit. A jury was waived and the case was tried by the court, resulting in a judgment for the defendant. A motion for a new trial was filed by plaintiff and the court sustained the same, giving as his reason that 'the court erred in sustaining defendant's objection to plaintiff's offer to prove that defendant waived the insured's engaging in a hazardous occupation.' Defendant has appealed.

"The contract consisted of the application, defendant's by-laws, and the benefit certificate. In his application the deceased stated that he was employed as a laborer with the Lexington Water Company and that he was not employed directly or indirectly 'in any of the occupations classed as hazardous or prohibited by the by-laws of this society;' that he agreed that he would not engage in any of such occupations except at the same time recognizing the full force and effect of defendant's by-laws limiting or extinguishing the society's liability upon the certificate of any member engaging in such occupation; that he agreed that if he failed to comply with any of such by-laws then in force or thereafter to be adopted, the benefit certificate should be void. The by-laws provided that any person who was engaged in the occupations named as hazardous in said by-laws should not become a beneficiary member of the society, and if any applicant change his occupation after making his application and prior to its adoption by engaging in such an occupation, he should not be eligible to join the

society as a beneficiary member. The by-laws named as hazardous the following among other occupations: 'II. Electric car, power, light or telephone lineman.' The by-laws provided that engaging in or entering on or continuing in any of the hazardous occupations therein named 'shall totally exempt said society from any and all liability to such member, his beneficiary or beneficiaries, on account of the death of such member directly traceable to employment in such hazardous or prohibited occupation.'

"The benefit certificate contains the following:

" 'If said member at any time after the issuance of said benefit certificate, shall enter upon any of the prohibited or hazardous occupations mentioned in the by-laws of this society, as the same now exists or hereafter may be modified, amended, added to or enacted, the entrance into said employment shall extinguish or limit the liability of this society upon said certificate in accordance with the by-laws thereof in force at the time of his death.'

"All of these provisions of the application, by-laws and benefit certificate were pleaded in the answer, together with the fact that the insured came to his death while in the performance of his duties and while engaged in the occupation of an electric lineman, and that his death resulted from an electric shock directly traceable to his said employment. The reply alleges that defendant and its officers had full knowledge of the fact that the insured had engaged in the occupation of an electric lineman, and with such knowledge defendant's officer stated to him that it was 'all right' for him to engage in such work and occupation and that if while so engaged he was killed, the benefit certificate would be paid 'without question;' that the insured relied upon such representation and continued to pay his dues and was in good standing at the time of his death; that by reason of such circumstances 'and the statements and waivers made' by the defendant, plaintiff was entitled to the insurance provided for in the benefit certificate.

"The offer of proof, containing matter which it is claimed shows waiver, which was excluded by the court and for which reason the court granted plaintiff a new trial, was to the effect that one Anthony Doble, a district deputy head consul of the defendant, while in Lexington, Missouri, the location of the camp of which the insured was a member, on financial business of the head camp, and while the local camp was in session, was asked by the insured 'at open lodge meeting' at the time Doble was explaining to the members of the lodge the by-laws and rules of the organization, whether or not, now that he had changed his occupation and was engaged as an electric lineman, if he were killed while so engaged, would his beneficiary receive her insurance, and that Doble replied 'that such work was classed as a hazardous occupation under the by-laws of the Modern Woodmen of America, but that unless Charles Homer Thomas was expelled from the order on account of him so engaging, and that if he continued as a member of the order and paid all dues and assessments levied against him and was not expelled by the Modern Woodmen of America, and was killed while engaged as a lineman for the electric light company, his beneficiary, Mary E. Thomas, would receive her benefits and that the insurance would be paid by the lodge without question.' That in reliance upon such statement made by Mr. Doble, for and on behalf of the head consul and head camp of the Modern Woodmen of America, deceased continued to pay all dues and assessments levied against him as such member, and that at the time of his death had paid all dues and assessments and complied with all the rules and regulations of the defendant.

"Plaintiff also offered to prove that shortly before deceased talked to Doble he stated to persons other than the representatives of the defendant that if there was any question about his insurance in the defendant because he was engaged in one of the occupations classed as hazardous, he would drop this insurance and take

303 Mo. Sup.—18.

other insurance; that he stated to his mother and other persons not representing the defendant that he relied upon the statements of Doble and continued to pay his dues and assessments on account of such assurance. The court likewise refused this offer of proof.

"Plaintiff insists that the court erred in excluding these offers of proof for the reason that they tended to prove that the 'defendant accepted dues and assessments with full knowledge on the part of the district deputy head consul that the insured was engaged in a prohibited occupation and defendant is now estopped from denying liability on account of such prohibited occupation.' We think that the court properly excluded these offers of proof, even assuming that Doble was such an officer of the defendant as would have authority to bind the defendant in the matters and things covered by the offer of proof, and there is a grave question as to whether he had such authority. We think that the evidence offered is insufficient to show either waiver or estoppel on the part of the defendant. The distinction between waiver and estoppel in insurance cases has not been fully recognized in the reported cases, but the two have been well defined in the case of Metcalf v. Phenix Ins. Co., 21 R. I. 307, 309, as follows:

"'A waiver arises by the intentional relinquishment of a right by a person or party, or by his neglect to insist upon his right at the proper time, and does not imply any conduct or dealing with another by which that other is induced to act or forbear to act to his advantage; while an estoppel necessarily presupposes some such conduct or dealing with another.'

"It is apparent that there was no relinquishment of a known right or neglect to insist upon a right at the proper time by the defendant. There was no forfeiture provided for the insured engaging in a hazardous occupation anywhere in the contract had by the insured with defendant. Under its terms he had a perfect right to enter upon any of the occupations denominated as hazardous in the by-laws and by doing so the policy did not

become void, but the agreement was that if he entered into such a prohibited or hazardous occupation and his death should be traceable to his employment in such, then the defendant should be exempt from liability under the policy. If after the insured entered into the hazardous occupation he died from any other cause, the policy was enforceable to the same extent as though no such clause against hazardous occupations was contained in the contract. At the time Doble received the information that the insured was engaged in an occupation denominated as hazardous or prohibited, defendant could not have expelled insured from the society because he had done so, for the reason that the contract recognized the right of the insured to engage in such an occupation. Defendant could not exact any higher rate of premium or assessment by reason of insured's entry into such an occupation. Under the provisions of the by-laws no person could obtain insurance who was engaged in any such occupation. Upon obtaining knowledge that insured had become an electric lineman, defendant had no right to refuse premiums thereafter offered by him upon the insurance. The benefit certificate was still in force and plaintiff had a perfect right to offer premiums due, and defendant to accept the same without any waiver upon defendant's part. This matter has been thoroughly settled by a number of decisions in other states. [Ridgeway v. Modern Woodmen, 157 Pac. (Kan.) 1191; Miller v. Illinois Banker's Life Assn., 212 S. W. (Ark.) 310; Abell v. Modern Woodmen, 105 N. W. (Minn.) 65; Modern Woodmen v. Talbot, 107 N. W. (Nebr.) 790; Crites v. Modern Woodmen, 117 N. W. (Nebr.) 776; Showalter v. Modern Woodmen, 120 N. W. (Mich.) 994; Frain v. Modern Woodmen, 155 Pac. (Colo.) 330; Modern Woodmen v. Weekley, 139 Pac. (Okla.) 1138.]

"Plaintiff in her brief quotes extensively from defendant's by-laws concerning expulsion and disciplining of members who should violate the rules of the society, but these have no bearing on the case. As before stated, insured, after obtaining the insurance, had a perfect

right under the by-laws to enter into any of the occupations denominated 'prohibited or hazardous.' If Doble representing the defendant made statements to the insured set forth in the offer of proof, such statements were not sufficient upon which to base a plea of estoppel against the defendant. One of the elements of estoppel is that the party to whom the misrepresentation or concealment of a material fact is made, must have been ignorant of the truth of the matter. [Acton v. Dooley, 74 Mo. 63, 67.]

" 'The law is quite well settled that a representation or defense, where one has been induced to act by reason thereof, should be of some fact then existing, or which had previously existed, and not merely a promise as to future conduct or intentions. Many of the authorities in support of this statement will be found cited in Bullock v. Wooldridge, 42 Mo. App. 356. In 2 Herman on Estoppel, sec. 778, it is stated: 'If the representation relate to something to be afterwards brought into existence, it will amount only to a declaration of intention or of opinion, liable to modification or abandonment upon a change of circumstances of which neither party can have any certain knowledge. The only case in which representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right and is made to influence others, and by which they have been induced to act.' In Cooley on Torts, sec. 474, it is stated: 'Actual or positive fraud consists in deception practiced in order to induce another to part with property or surrender some legal right and which must relate to facts then existing or which had previously existed and which are material to the dealings between the parties on which the deception was employed.' [Morris v. McMahan, 75 Mo. App. 494, 497.]

"The law as above stated is supported in the following authorities: Insurance Co. v. Mowry, 96 U. S. 544; 2 Herman on Estoppel, sec. 778; Bullock v. Wooldridge, 42 Mo. App. 356, 361, 362; 16 Cyc. 752.

State ex rel. Thomas v. Trimble.

"It is apparent that the representations made by Doble were not of some existing fact but were merely a promise or an assumed future fact, for the offer to prove shows that the insurance was to be good only in case the defendant did not expel the insured, and the sense of the statement of Doble is that if the defendant desired at any time in the future to expel insured it retain the right to do so. It was only in case that it did not expel him that .his insurance would be good. Doble did not even promise the insured that defendant would not expel him.

"In 16 Cyc. 756, 757, it is stated: 'An admission, in order to constitute an estoppel, must relate to a matter of fact, and a person will not be estopped by an admission as to the law; and the same rule applies to admissions as to the legal effect of a contract.' And at pages 750, 751: 'A representation, to constitute an equitable estoppel, must ordinarily be as to a matter of fact and not a mere matter of opinion.'

"It is apparent that all that Doble was attempting to do was to give his opinion as to the provisions of the contract of insurance that defendant had with the insured. At the time insured asked the question Doble was engaged in explaining to the members of the lodge the by-laws and rules of the organization and Doble was merely putting his construction upon the contract. The terms of this contract were known to the insured at the time. At the time the insured had the conversation with Doble he knew that he had engaged in an occupation denominated by the society as hazardous or prohibited and he was fearful that by reason of this fact his insurance would not be good, so he asked Doble concerning the matter. The certificate which he then had in his possession provided that if he engaged in any of these prohibited or hazardous occupations, 'the entrance into said employment shall extinguish or limit the liability of this society upon said certificate in accordance with the by-laws thereof in force at the time of his (insured's) death.' Therefore the insured had

knowledge of the provisions of the contract at the time he questioned Doble in reference to the same. The insured was not ignorant of the matter of which he was asking Doble. There is no claim that the statements or representations made by Doble were not made in good faith or that they were fraudulent, and under the circumstances it cannot be said that Doble was doing other than expressing his opinion as to the meaning or legal effect of the contract. [Miller v. Life Assn., supra.]

"However, it is contended by plaintiff that the undisputed evidence shows that the insured came to his death as the direct result of phosgene gas poisoning that he received while a member of the American Army in France during the late war; that the burden of proof was upon the defendant to show that insured came to his death as the result of being engaged in a prohibited or hazardous occupation; that that burden has not been discharged and that this court should reverse and remand the cause with directions to the lower court to enter judgment in favor of plaintiff.

"One of the assignments in the motion for a new trial was that the finding was against the weight of the evidence. The court having assigned his reason for sustaining the motion for a new trial, he necessarily overruled the motion as to the assignments not mentioned by him. [Beuhler v. Paint Co., 231 S. W. 283, 287.] We therefore must hold that the trial court found that insured did not come to his death as the result of phosgene gas poisoning, but as the result of receiving an electric shock and burn while engaged in his duties as lineman. There was. only one witness, named Asbury, to the death of the insured and he did not see the whole occurrence. This witness testified that he was working with insured and that he was about half a block from the insured at the time of the latter's death; that he saw the insured go up the pole carrying the wire charged with a deadly current of electricity and that he next saw him strike the ground; that a tree obstructed the view of the witness; that insured was working on a high volt-

age wire. The witness went up the pole after insured fell and found a wire 'to be tapped into the transformer.' Insured was supposed to make 'the primary tap on the transformer.' When the witness reached the top of the pole he found that the work had been started by the insured. On direct examination the witness said that his attention was first attracted by a flash of electricity; that he heard his name called and that he judged that it was called by the insured; that the tone of the voice 'seemed like it was a cry of pain.' The theory of plaintiff as to the immediate happening causing the insured's death is not plainly set forth in her brief, but we assume that it is her theory that the insured died as the result of phosgene gas poisoning and that he then fell upon a live wire and that the flash of light occurred when he struck the wire and after his death. However, the testimony of Asbury upon direct examination would tend to show that insured was alive after he struck the wire and tended to show that the live wire was the cause of the death. However, later in his testimony, this witness testified that he would not be positive whether it was before or after he saw the flash that he heard his name called, or that he ever heard his name or saw deceased fall. He testified that he examined the body after it fell and found a burn on insured's arm about the size of a quarter. This appeared to be an electrical burn; that the witness had experienced shocks a great many times in his work as a lineman, and that the burns he received were always reddish white burns; that they never were dark brown or dark blue, such as were the burns that appeared on deceased's body.

"Plaintiff introduced expert testimony tending to show that burns upon a live man's body caused by electricity would be reddish white in color, and that blue black burns indicated *post* death burns. Plaintiff also introduced testimony tending to show that the deceased had received a severe gassing from phosgene gas while in action in France, and that a few days before his death he complained of a filling-up sensation in his lungs; plain-

tiff introduced expert testimony tending to show that at any time from one to five years after a person has been subjected to gassing by phosgene gas the gas might attack the heart and cause instant death; that one of the symptoms of such gas in the system was the sensation known as 'filling up' of the lungs; that said gas was harmless or at least would not kill a person unless it came in contact with the heart, and that it usually caused more trouble after exercising than at any other time. These experts testified in answer to hypothetical questions propounded to them that deceased could or might have come to his death from the effects of phosgene gas.

"Defendant introduced the death proofs furnished by plaintiff which stated that deceased came to his death at Liberty, Missouri, on June 17, 1919, as the result of an electric shock and the immediate cause of his death was an electric shock. We need not say whether the evidence of witness Asbury, in view of the great conflict therein, was sufficient from which the court could have found that deceased came to his death as the result of an electric shock rather than phosgene gas poisoning, for the reason that the proofs of death themselves were some evidence that the death was caused by an electric shock. The law is that such proofs are conclusive upon plaintiff as to the cause therein mentioned as the death of the insured unless explained. [Remfry v. Ins. Co., 196 S. W. 775, 778; West v. National Council, 221 S. W. 391, 392; Castens v. Supreme Lodge, 190 Mo. App. 57; Stephens v. Met. Life Ins. Co., 190 Mo. App. 673, 680.] An explanation was attempted to be made by plaintiff in this case as to why it was stated in the proofs that an electric shock was the immediate cause of insured's death. Whether that explanation was sufficient to rob the proofs of their conclusive character we need not say, for the reason that even if such explanation was such that the jury, or the court sitting as a jury, could find it sufficient and true in fact, nevertheless, even after the explanation was made, the court sitting as a jury could still refuse to believe the explanation

and base his conclusions on the fact that deceased came to his death from an electric shock upon the proofs of death alone. Neither was the court required to believe the expert testimony, especially in view of the fact that such testimony covering the characteristics of phosgene gas and gas poisoning was based almost exclusively upon books and lectures rather than actual experience.

"From what we have said the judgment should be reversed and the cause remanded with directions to reinstate the judgment in favor of the defendant, and it is so ordered. All concur."

The rulings which relator claims are evidenced by the foregoing opinion and which he asserts engender conflict are as follows: (1) An appellate court, on an appeal from an order granting a new trial, cannot consider any assignment of error contained in the motion for a new trial other than the one upon which the trial court based the order; (2) a by-law of a fraternal beneficiary society which forbids its officers from waiving any of the conditions of the benefit certificates issued by it is valid; (3) the trial court in the case under review properly excluded the evidence of statements made by the district deputy head consul, covering a period of ten years, which led members of the society to believe that it did not require them to live up to its rules in regard to prohibited and hazardous occupations; and (4) the acceptance and retention by a beneficiary society, with full knowledge of all the facts, of dues and assessments paid by a member employed in a prohibited or hazardous occupation, does not constitute a waiver of the provisions of the contract between the society and the member with respect to such employment.

1. That the Court of Appeals made any such ruling as is claimed under this head is nowhere disclosed by the opinion. It does appear, that whether the insured died from the effect of phosgene gas poisoning, or whether from contact with a wire carrying a heavy voltage of electricity, was an issue of fact in the trial of the case; that the Court of Appeals reviewed the evidence

with respect to this issue and held that there was substantial evidence to support the finding of the trial court, sitting as a jury, to the effect that the death of the insured resulted from an electric shock and burn; and that the court further held, in effect, that the finding on an issue of fact by a jury, or by a court sitting as a jury, supported by substantial evidence and approved by the trial court, must, on appellate review, be taken as a verity. These holdings in nowise contravene any decision of this court.

2. Neither did the Court of Appeals pass on the validity or effect of any by-law of the society forbidding its officers to waive the conditions of the benefit certificates issued by it. On the contrary the principal ruling in the case was based on the assumption that the statements claimed to have been made by the district deputy head consul were within the scope of his agency.

3. A careful reading of the opinion fails to disclose any reference to the alleged ruling of the trial court specified under this head.

4. Relator's last assignment covers the rulings of the Court of Appeals with respect to the matters pleaded in the reply as constituting waiver or estoppel. As to these matters the court held:

First, that as the contract of insurance, as evidenced by the application, certificate and by-laws, did not prohibit the insured from engaging in the designated hazardous occupations, nor provide for forfeiture upon his doing so, but merely exempted the society from liability in the event of his death directly traceable to such employment, the acceptance and retention of assessments and dues by the society, even though it had full knowledge at the time that the insured was employed in a hazardous occupation, would not operate as a waiver— because no right of the society was involved upon which a waiver could operate, it was no concern of its that the insured was employed in a hazardous occupation, such employment did not increase, or diminish, or in any wise affect the risk covered by the contract of insurance.

Second, that the statements made by the district deputy head consul, in reply to the question propounded to him by the insured in open lodge, was not a representation as to a past or existing fact, but merely the expression of an opinion, given in good faith, as to the legal affect of certain provisions of the contract of insurance, with which both he and the insured were entirely familiar, and that therefore such statement could not be made the basis of an estoppel.

The rulings summarized in the preceding paragraphs are not in conflict with any decision of this court to which our attention has been called. We certainly have never held that a statement made by a general agent of an insurance company, to one of its policyholders, expressing an opinion as to the legal effect of the provisions of the latter's policy, was, absent fraud, binding on the company, either as an admission or on the ground of estoppel. The rulings in Mathews v. Modern Woodmen, 236 Mo. 326; McMahon v. Maccabees, 151 Mo. 522; Mining & Milling Co. v. Fire Ins. Co., 267 Mo. 524, and other cases cited by relator as evidencing conflict, were based on facts calling for the application of legal principles entirely different from those applicable to the facts in judgment before the Kansas City Court of Appeals. Its decision not only does not conflict with the decisions of this court, but is in harmony with the weight of authority elsewhere. [21 C. J. 1142, 1147; authorities cited in the opinion of the Court of Appeals.] It follows that our writ should be quashed. It is so ordered. All concur except *Woodson, C. J.,* and *Graves, J.,* who dissent.