IDA G. MASSON, RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.—36 S. W. (2d) 118.

Kansas City Court of Appeals. December 1, 1930.

*Mytton & Parkinson* and *Miles Elliott* for respondent.

*John C. Landis, Jr.,* and *John C. Landis, III,* for appellant.

CAMPBELL, C.—This is a suit upon a policy of life insurance in the sum of $1,000 issued by defendant to Burtin F. Masson, in which plaintiff, the assured's wife, is named as beneficiary. Plaintiff recovered judgment for the amount of the policy, penalties and attorneys' fees, and defendant appeals.

Appellent has not made attack upon the petition and reference to its allegations is, at this time, unnecessary.

Counsel for appellant conceded that plaintiff made a prima-facie case, and we will not at this time state in detail the evidence offered by her. At the close of the plaintiff's case the defendant, after moving unsuccessfully for a directed verdict, introduced evidence tending to show that the policy in suit lapsed for the nonpayment of the premium due on the first day of March, 1927; that re-instatement was applied for by assured on May 26, 1927, at which time the insured paid the premium then due in the sum of $22.08; that in the

application for reinstatement it is stated that insured was then in sound health and that he had not had any illness or injury since the issuance of the policy, and that in event of untrue answer or statements therein the reinstatement would not be effective until two years thereafter except that defendant shall return to the insured, or his personal representative, all premiums paid since the date of reinstatement. It is claimd by defendant that its evidence showed that at this time insured was suffering from inflammation of the brain and that he died of that disease on the second day of the following June. Apart from expert testimony as to the possible duration of that disease, the only evidence, if such it may be called, tending to show that insured, at the time of reinstatement, was suffering from inflammation of the brain and that he died of that disease, is contained in defendant's Exhibit B. Defendant offered portions of the plaintiff's deposition in which it is stated that on the day following the death of her husband she went to defendant's office in St. Joseph and there received blank proofs of death; that one of those blanks was filled and signed by the physician who attended her husband in his last illness; that afterwards on the same day she took them back to the office of the defendant and tendered them to the person in charge and that said tender was refused.

The physician attending assured in his last illness, as defendant's witness, testified the insured called at his office on May 19, 1927, and that subsequent to that time, the exact time not being stated, he treated insured professionally until the time of his death; that he did not know whether he prepared Exhibit B at the request of plaintiff or at the request of a representative of defendant. The exhibit, over the objection of plaintiff, was admitted in evidence and it is therein recited that the insured died on June 2, 1927; that the cause of death was inflammation of the brain; that he continuously suffered therefrom during a period of twelve days immediately preceding his death, and that said attending physician was first called to visit decedent on May 20, 1927.

Appellant seeks to invoke the well-established rule that statements in proofs of death as to the cause of death, etc., furnished an insurance company by a beneficiary are conclusive and binding unless explained. [State ex rel. Thomas v. Trimble, 303 Mo. 266, 280.] The rule stated seems to be well established, but the question in this case is, does the proof (Exhibit B) bring the case within the rule? There is no evidence that plaintiff furnished the proof referred to or any proofs to defendant. On the contrary, it is shown that she tendered proofs and that the same were refused. There is no evidence that defendant or any of its representatives ever had any knowledge of the statements contained in Exhibit B until during the trial of the cause.

In this connection, the defendant's amended answer is important. It is therein alleged that it was plaintiff's duty, under the terms of the policy, to furnish proofs of death on forms provided by defendant; that defendant did furnish the forms but that plaintiff "failed and refused to present said proofs to this defendant." Having answered that plaintiff had failed to make proofs, defendant ought not be allowed to claim that the blank form filled up by the attending physician and retained by plaintiff until it was brought to light by the defendant's notice to produce, is proof of death within the meaning of the decisions referred to. Plaintiff did not furnish proof of death to the defendant and there is, therefore, no evidence on which to base the contention that plaintiff is bound by the statements contained in the paper signed by the attending physician, and which was never in the custody or possession of defendant. The exhibit, in the circumstances, was nothing more than the ex parte statement of defendant's witness.

In 22 C. J. 308, it is said:

"Where a document is of a character ordinarily delivered to another person, but it has never been delivered, it may fairly be contended that statements therein were in effect never made, and hence do not constitute admissions which are receivable in evidence."

Appellant contends the burden of proof was on plaintiff to show that the insured was in sound health at the time of reinstatement. The defense is an affirmative one, to the effect that insured made false representation as to his health, and the burden was on defendant to make out its defense. [Burgess v. Pan-American Life Insurance Company, 230 S. W. 315, 321.]

Defendant's witness, the attending physician during the last illness of the assured, was asked to state whether he treated the insured for the disease of which he died from the 20th day of May until the date of his death. Objection to the question was sustained and defendant then made offer to prove by the witness that he was called to treat the insured on the 19th day of May; that insured was then suffering from inflammation of the brain and that disease caused his death; that the witness treated the insured continuously from the 19th day of May until the date of his death. Upon plaintiff's objection the offer was excluded and that ruling is assigned as error. The offer was properly excluded. The offer shows that it was an attempt to prove by the attending physician the knowledge he acquired and needed to acquire in order to treat the patient. [Section 5418, R. S. 1919; Hicks v. Metropolitan, 190 S. W. 661; Chadwick v. Company, 256 S. W. 501.] Later in the trial and after plaintiff had testified that her husband was working on the day of the date of the application for reinstatement, the physician was recalled and defendant offered to prove by him that he called at the home of the insured on the 25th and 26th day of May, 1927, and on each of said dates found

insured sick and unable to work or perform any manual or other labor. The offer was excluded. Defendant then offered to prove by the witness that from his personal knowledge gained by visiting insured on the 25th and 26th days of May, the insured was not working and did not work on either of said days. Counsel explained "that visiting Burtson F. Masson" was in a professional capacity, and thereupon the objection to the offer was sustained. Defendant then offered to prove by the witness that on the 20th day of May, 1927, insured was suffering from inflammation of the brain. It is argued that it was proper for the witness to testify that insured was not working on the 26th day of May for the reason, among others, that it tended to contradict plaintiff's evidence on that subject. The witness had stated before these offers were made that he had no relationship with insured "except as doctor and patient." The offer was an attempt to do indirectly what could not be done directly. The witness had no relation with the insured except that of physician and patient, and to permit him to testify that he visited him on the 25th or 26th days of May, would, in effect, allow defendant to prove insured was not in sound health on either of those days.

It is also argued that the privilege was waived. In presenting that question it is assumed that the plaintiff furnished defendant with proofs of death. What we have said relative to the proofs of death is applicable here, and even though such proofs had been furnished to defendant, the privilege would not have been waived. [Hicks v. Metropolitan, supra.]

Counsel forcibly argue defendant had the right to believe and did believe the statements contained in Exhibit D, and so believing, should not be penalized for refusal to pay. That exhibit, obtained by defendant without the knowledge or participation of plaintiff, and of the existence of which she did not know until it was produced at the trial, is a signed, unverified statement of the physician who attended insured during his last illness. It is therein stated the insured died on June 2, 1927, of inflammation of the brain; that he was first visited by said physician on May 9, 1927; and that the duration of the fatal illness was twenty-one days. Said physician, on defendant's behalf at the trial, testified that inflammation of the brain is "ordinarily an acute disease that develops rapidly" and that a person who died on June 2 of that disease could have been in good health on the 26th day of the preceding May.

Parts of plaintiff's deposition, by whom taken does not appear, was introduced by defendant. Therein she said that on the day after the death of her husband she went to defendant's office in St. Joseph, received blanks for proof of death, had them filled out and on the same day returned to defendant's office and tendered said proofs to defendant and the tender was refused. Further in the deposition there are statements not in harmony with the foregoing,

but the absence of consistency in the deposition is not for this court. It is undisputed defendant denied liability before the institution of the suit, and that one of plaintiff's counsel called at the defendant's office and was told it was needless or useless to furnish proofs of death.

Plaintiff, at the trial, testified that her husband was working on May 26; that he appeared to be in good health; that he had not at that time had a doctor, so far as she knew. She then said: "Q. When he took down in his last illness, when he took sick from the last illness from which he died, how long afterwards or before was it? A. Four days, Judge. Q. What do you mean? Do you mean about four days after this money was sent up? A. Yes."

On May 26, 1927, the premium in arrears, $22.08, was paid to defendant's representative who, at that time, signed a statement which was introduced by defendant and in which it is stated "I have on this date personally seen the former assured, that the above signature is genuine and that the former assured is apparently in sound health." There is evidence that the return of premium was tendered to plaintiff but there is no evidence as to when such tender was made. Defendant introduced a receipt signed by the clerk of the court in which the clerk acknowledged receipt of $22.08 "deposit fee" in the case under date of February 9, 1928.

The answer on file at that time was a general denial. The amended answer was filed January 25, 1930. One of the defenses alleged in the amended answer is that the contract of insurance provides it is the duty of plaintiff to furnish proof of death upon forms provided by defendant; that defendant provided forms but plaintiff failed and refused to present same to the defendant.

In the reinstatement application it is provided that if the representations contained therein are in any respect untrue, the defendant shall, for a period of two years from the date of such reinstatement, be under no liability except it shall return to the insured or his personal representative all premiums paid since the date of reinstatement. There is no evidence that defendant ever tendered return of the premium to insured or his personal representative. The burden was upon defendant to prove tender of the premium to the administrator of the estate of the assured and this burden it wholly failed to carry. The court did not err in submitting the question of vexatious refusal to pay. [Pauley v. Business Men's Assurance Company of America, 217 Mo. App. 302, 311, 261 S. W. 341.]

In this connection it is also argued that the statements in Exhibit B relative to the cause of death and duration of insured's illness, are conclusive and binding on plaintiff unless explained, and that she offered no explanation; that the evidence of a lay witness that a person is apparently in sound health, is of no value. It is said this contention is supported by Clark v. National Life, 288 S. W. 944. In

that case insured was suffering from goiter at the time the insurance was granted. The holding in that case is not only good law, but good sense. The affliction was not apparent to the eye of a layman. In this case however, there is expert testimony that inflammation of the brain (sleeping sickness) is an acute disease and ordinarily develops rapidly; that a person who died from that disease on June 2, may have been in good health on the 26th day of the preceding May. Plaintiff testified that her husband did not appear to become ill until the fourth day "after the money was sent up," May 26, 1927. If insured died on the 2d day of June, 1927, of an acute disease that develops rapidly, and appeared to be in sound health until the 30th day of the preceding May, then the question of whether he was afflicted with that disease on the 26th of May would be for the jury, even though we accord to the statements contained in Exhibit B the same force and effect as if that exhibit had been furnished to defendant.

It is contended that if false representations were contained in the application for reinstatement, the policy was not thereby rendered void but that defendant's liability was, by the terms of said application, limited to a return of the premiums paid after the date of reinstatement.

It has been held that Section 6142, Revised Statutes 1919, relating to the effect of misrepresentations made in obtaining a policy, applies to misrepresentations made in securing the reinstatement of a policy. [Jenkins v. Covenant Mutual Life Insurance Company, 171 Mo. 375, 382.] Life defenses have been attempted many times in our courts but have not met with success. [Dodt v. Prudential Life Insurance Company, 186 Mo. App. 168, 171 S. W. 655; Burns v. Metropolitan Life Insurance Company, 141 Mo. App. 212, 124 S. W. 539.]

We are urged to set aside the verdict of the jury because plaintiff's evidence is overwhelmingly outweighed by the defendant's evidence, and because the jury could not have found against the defendant unless swayed by passion and prejudice. What we have said disposes of the question adversely to appellant. Finding no reversible error in the record, the judgment is affirmed. The Commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.