EKLUND v. METROPOLITAN LIFE INS. CO.

No. 5717. Decided April 29, 1936. (57 P. [2d] 362.)

*R. L. Beezley* and *J. H. McKnight,* both of Salt Lake City, for appellant.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for respondent.

EPHRAIM HANSON, Justice.

This action was brought by Gust Eklund as administrator of the estate of Alice Eklund, deceased, against the Metropolitan Life Insurance Company to recover upon two insurance policies issued by the company upon the life of Alice Eklund. As a defense to the action and as a refusal of payment, the company set up that the policies had been obtained by fraud and misrepresentation in that the assured represented to the company at the time of obtaining each of said policies that she had never been afflicted with cancer or other tumors; that she had never been under treatment in any clinic; that she had not been under the care of any physician within three years prior to the time that said applications for insurance were made; that she had not received treatment in any hospital; and that she was on the dates when she applied for the policies in sound health and had no physical defect or infirmity of any kind; that the statements so made were untrue and avoided the policies. At the conclusion of the evidence, the court directed the jury to return a verdict in favor of the insurance company. To reverse the trial court's rulings, the administrator appeals.

The record before us shows that Alice Eklund died on

October 10, 1934; that on November 2, 1933, she applied in writing to the defendant for a life insurance policy in the sum of $180; that on January 31, 1934, she applied in writing for another policy in the sum of $540. The policies, payable to the administrator or executor of the assured's estate, were issued on November 13, 1933, and on February 19, 1934, respectively. Both applications by the assured for the policies contained the following:

"To induce the Metropolitan Life Insurance Company to issue Policy and as consideration therefor I agree, on behalf of myself and of any other person who shall have or claim interest in any Policy issued under this application as follows:

"1. I have never had any of the following complaints or diseases: * * * cancer or other tumor, * * * ulcer or open sores.

"2. I have never been under treatment in any clinic, dispensary, hospital or asylum. * * *

"3. I am now in sound health and am not blind, deaf or dumb, nor have I any physical or mental defect or infirmity of any kind. * * *

"5. I have not been under the care of any physician within three years.

"I hereby declare that the statements recorded above are true and complete and I agree that any misrepresentation shall render the Policy void."

At the trial the defendant called Dr. R. W. Quick, a physician and surgeon, who testified that he treated the assured on April 5, 10, 13, 17, 21, July 31, August 7, and October 4, all in the year 1933; that he diagnosed her illness as ulcers of the stomach and treated her for that ailment; that between April 5 and October 4 she lost 120 pounds; that in his opinion she was suffering from cancer of the stomach in October, 1933; and that she continued to suffer from it up to the time of her death. Defendant also called Dr. James P. Kerby, another physician and surgeon and an X-ray specialist, who testified that he made examinations of the assured in February, March, and August of 1934; that he took X-rays of her in the month of February; that she told him at that time that she had lost 110 pounds in weight, and that from her appearance and the examinations made and

an examination of the X-rays, he was able to make a positive diagnosis of cancer, and that in March, 1934, he recommended she be operated on to see if it were possible to effect a cure by operation; that she had had cancer probably from twelve to eighteen months prior to the time that he first examined her. Dr. Taufer, another physician and surgeon, testified for defendant that the assured came to the general Hospital in Salt Lake county for treatment on the 29th of January, 1934, but returned to her home the same day; that she was again admitted to the General Hospital on May 14, 1934, and was kept under observation and treatment until June 2, 1934, at which time he performed an exploratory operation and discovered such a cancerous condition of the stomach that in his opinion it was useless to attempt to remove the cancer; that he sewed the patient up without any attempt to remove the cancer; that she remained in the hospital until about the 1st of July and was then released to go home; that she returned to the hospital the latter part of September or early in October, and remained in the hospital until her death on October 10, 1934.

The plaintiff duly objected to the evidence given by the three physicians on the ground that the matters to which they were testifying were privileged, were matters acquired in their professional capacity as physicians and surgeons while the assured was their patient and were in violation of section 104-49-3, R. S. Utah 1933, which reads as follows:

"A physician or surgeon cannot, without the consent of his patient, be examined, in a civil action, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

The objections of plaintiff were overruled and the witnesses were permitted to testify on the theory that plaintiff had waived the privilege created by the statute by offering in evidence the proofs of death. Each of the policies contained the following provision:

"Proofs of death shall be made upon blanks to be furnished by the company and shall contain the answer to each question propounded to the claimant, to the physicians and to other persons, and shall contain the record, evidence and verdict of the coroner's inquest, if any be held. All the contents of such proofs of death shall be evidence of the facts therein stated in behalf of, but not against, the company."

The questions on one of the forms so furnished by the company required the physician of the assured to answer certain questions. Among the questions and answers made thereto by Dr. Louis J. Taufer were the following:

"6. Cause of death? A. Carcinoma of stomach with metastasis of liver and esophagus. Duration from personal knowledge? A. 5 mos. Duration from history given? A. 5 mos. Contributory or secondary? A. Anemic starvation. Duration? A. 5 mos.

"9. Date of your first visit in last illness? A. June 18, 1934. Date of your last visit? A. Oct. 8, 1934.

"10. How long had deceased been ill when you were called to attend in last illness? A. 1 to 2 months when first seen."

This proof of death was duly signed by the said Dr. Louis J. Taufer.

Another form furnished by the company required a statement of the claimant, and this was also duly furnished by the plaintiff and contained the following:

"6. What date did deceased first consult a physician for last illness? A. June 25, 1934. * * *

"8. Had deceased ever received treatment in any hospital, dispensary or other institution? If so, give full particulars and dates. A. From latter part of June, 1934, until date of death Salt Lake General Hospital."

The plaintiff also introduced in evidence a copy of death certificate filed with the state board of health of the state of Utah. This certificate was duly signed by Dr. Sundwall and certified that he attended deceased from October 1, 1934, to October 10, 1934, and that death occurred on the last-named date from cancer of the stomach.

Did the introduction in evidence by the plaintiff of these proofs of death waive the privilege created by the statute? Wigmore in his excellent work on evidence says:

"The sending of a physician's certificate, as part of the *'proofs of death'*, by the beneficiary of a contract of life insurance or the representative of the insured, is a voluntary disclosure of the physician's knowledge, though made in pursuance of contract, and is therefore a waiver." 5 Wigmore on Evidence (2d Ed.) § 2390, p. 226.

The cases which are cited by Wigmore in support of his text do not hold that the filing of such certificates waives the privilege created by the statute to the extent that the physicians may be called upon to disclose any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

In *Briesenmeister* v. *Supreme Lodge K. of P. of the World,* 81 Mich. 525, 45 N. W. 977, the court says that the statements in the proofs of death are a waiver of the privilege only in so far as such statements refer to the matter claimed to be privileged. A very able and interesting discussion of this question is found in the case of *Hicks* v. *Metropolitan Life Ins. Co.,* 196 Mo. App. 162, 190 S. W. 661, 664. The court in that case cites and analyzes various authorities on the question and says:

"Such certificates are not admitted upon the theory that the statements of the physician therein contained may be received as evidence coming from him to establish the truth of the matters therein stated, but upon the theory that the statements in the certificate, filed as a part of the proofs of death, are to be taken as admissions made by the beneficiary and to be reckoned with as such in the case. Such admissions are not incompetent, though made through the medium of the certificate of an attending physician; but the filing of such a certificate, in order to comply with the provisions of the policy respecting proofs of death, does not operate as a waiver of the incompetency of the physician as a witness."

The authorities are quite unanimous in holding that by the introduction of the proofs of death the beneficiary has

not waived the privilege created by the statute. See 70 C. J. 467, § 633; *Repala* v. *John Hancock Mut. Life Ins. Co.*, 229 Mich. 463, 201 N. W. 465; *Masson* v. *Metropolitan Life Ins. Co.*, 225 Mo. App. 925, 36 S. W. (2d) 118; *Frazier* v. *Metropolitan Life Ins. Co.*, 161 Mo. App. 709, 141 S. W. 936; *Acee* v. *Metropolitan Life Ins. Co.*, 219 App. Div. 246, 219 N. Y. S. 152; *Redmond* v. *Industrial Ben. Ass'n*, 78 Hun, 104, 28 N. Y. S. 1075, affirming 150 N. Y. 167, 44 N. E. 769; *Gilchrist* v. *Mystic Workers, etc.*, 188 Mich. 466, 154 N. W. 575, Ann. Cas. 1918C, 757; *Buffalo Loan, Trust & Safe-Deposit Co.* v. *Knights Templar & Masonic Mut. Aid Ass'n*, 126 N. Y. 450, 27 N. E. 942, 22 Am. St. Rep. 839; *Nelson* v. *Nederland Life Ins. Co.*, 110 Iowa 600, 81 N. W. 807; *Lammiman* v. *Detroit, etc., Ry. Co.*, 112 Mich. 602, 71 N. W. 153; *Jones* v. *Preferred Bankers' Life Assur. Co.*, 120 Mich. 211, 79 N. W. 204.

We believe the correct rule is that under the provisions of the policy with respect to such proofs of death as are therein referred to, statements in such proof furnished to the insurance company in compliance with the condition of the policy of insurance are admissible as prima facie evidence of the facts stated therein against the assured and on behalf of the company, but that the furnishing of such proofs is not a waiver of the incompetency of the physician as a witness. This holding is in accordance with the rule announced in *Bozicevich* v. *Kenilworth Mercantile Co.*, 58 Utah 458, 199 P. 406, 409, 17 A. L. R. 346. In that case the defendant offered in evidence a certified copy of a death certificate which under the statutes of this state is made prima facie evidence in all courts and places of the facts stated therein, and the court held that the admission of such certificate could not be considered as a waiver of the privilege created by section 104-49-3, R. S. Utah 1933, and was only prima facie evidence of the facts stated in the certificate.

It was error for the trial court to permit the physicians to testify over the objection of plaintiff to information ac-

quired in attending the assured which was necessary to enable them to prescribe or act for the assured. The physicians could testify to information acquired while ■ treating the assured, provided the testimony did not include information acquired in attending the assured which was necessary to enable them to treat or act for the assured. A physician may testify as to the fact of employment by a patient; that he treated or attended the patient; that he performed an operation on the patient; the number of visits and the dates thereof; the place of attendance; duration of treatment and when the treatment ceased, and similar facts. *Chadwick* v. *Beneficial Life Ins. Co.,* 54 Utah 443, 181 P. 448; *Dittrich* v. *Detroit,* 98 Mich. 245, 57 N. W. 125; *Price* v. *Standard Life & Acc. Ins. Co.,* 90 Minn. 264, 95 N. W. 1118; *Sovereign Camp* v. *Grandon,* 64 Neb. 39, 89 N. W. 448; *Klein* v. *Prudential Ins. Co.,* 221 N. Y. 449, 117 N. E. 942; *Patten* v. *United Life, etc., Ins. Ass'n,* 133 N. Y. 450, 31 N. E. 342; *Sparer* v. *Travelers' Ins. Co.,* 185 App. Div. 861, 173 N. Y. S. 673; *Haughton* v. *Aetna Life Ins. Co.,* 165 Ind. 32, 73 N. E. 592, 74 N. E. 613; *Cooley* v. *Foltz,* 85 Mich. 47, 48 N. W. 176; *Deutschmann* v. *Third Ave. R. Co.,* 87 App. Div. 503, 84 N. Y. S. 887; *Dalman* v. *Koning,* 54 Mich. 320, 20 N. W. 61.

Testimony by Dr. Quick that the assured was his patient; that he treated her at the times and places indicated; the testimony of Dr. Kerby that he examined the assured and took X-rays of her; the testimony of Dr. Taufer that the assured on January 29, 1934, was treated at the ■ Salt Lake General Hospital by him, did not violate either the letter or the spirit of the statute. Defendant contends that this evidence given by the physicians and which was competent for them to give was such as to require a directed verdict upon any one of three grounds: (1) Breach of warranty in the applications; (2) fraud in procuring the policies; and (3) breach of the conditions in the policies themselves.

If these policies came within the provisions of section 43-3-24, R. S. Utah 1933, the argument of counsel for the defendant might be seriously questioned. *Chadwick* v. *Beneficial Life Ins. Co.*, supra. Under subdivision (4) of that section a life insurance policy must contain the following:

"A provision that the policy shall constitute the entire contract between the parties, and that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement or statements shall be used in defense of a claim under the policy, unless contained in a written application therefor and a copy of such application shall be indorsed upon or attached to the policy when issued."

It, however, is asserted by the respondent and not disputed by appellant that the policies in question are what are termed "industrial policies," and hence exempted from and not within the statute just referred to. We therefore so regard the policies and thus treat them in accordance with the terms and conditions therein contained, and as stipulated by the parties thereto. In the applications for insurance, as heretofore set out, the assured stated that she had never been under treatment in any hospital; that she had not been under the care of any physician within three years; she declared that these statements were true and complete and that any misrepresentation would render the policy void. These statements were false. Her application for the first policy was made November 2, 1933, less than a month after the last date she had been treated by Dr. Quick. The application for the second policy was made the 31st of January, 1934, two days after assured had been treated by Dr. Taufer at the Salt Lake General Hospital. The statements which the assured made were material to the risk. The policies were issued without any physical examination of the assured. Whether the company would issue the policies was dependent upon the answers of the assured. The utmost good faith to answer truthfully was required of her. On the assumption that the statements in the applications were

true, the policies were issued. By making the false representations, which the assured did, the company was misled to its prejudice. Whether we class the statements made by the assured as representations or warranties, the same result is reached so far as the facts of this case are concerned. If a representation is material to the risk and likewise knowingly false, it will be as potent for a rescission of the contract embodied in the policy as if the untrue statement was made in form a warranty. *Metropolitan Life Ins. Co.* v. *Brubaker,* 78 Kan. 146, 96 P. 62, 18 L. R. A. (N. S.) 362, 130 Am. St. Rep. 356, 16 Ann. Cas. 267; *Whitney* v. *West Coast Life Ins. Co.,* 177 Cal. 74, 169 P. 997; *National Union* v. *Kelley,* 42 Okl. 98, 140 P. 1157; *Mutual Life Ins. Co. of New York* v. *Arhelger,* 4 Ariz. 271, 36 P. 895; *Mutual Life Ins. Co. of New York* v. *Chandler,* 120 Or. 694, 252 P. 559; *Germania Life Ins. Co. of New York* v. *Klein,* 25 Colo. App. 326, 137 P. 73; *Fraternal Aid Union* v. *Miller,* 106 Okl. 277, 234 P. 357; *Kahn* v. *Royal Indemnity Co.,* 39 Cal. App. 180, 178 P. 331; *Williams* v. *Mutual Life Ins. Co. of New York,* 61 Mont. 66, 201 P. 320; *Aetna Life Ins. Co. of Hartford* v. *Perron* (C. C. A.) 69 F. (2d) 401; *New York Life Ins. Co.* v. *Stewart* (C. C. A.) 69 F. (2d) 957; *Lyttle* v. *Pacific Mut. Life Ins. Co.* (C. C. A.) 72 F. (2d) 140; *Popowicz* v. *Metropolitan Life Ins. Co.,* 114 Conn. 333, 158 A. 885; *Chorney* v. *Metropolitan Life Ins. Co.,* 54 R. I. 261, 172 A. 392; *Metropolitan Life Ins. Co.* v. *Chappell,* 151 Tenn. 299, 269 S. W. 21; *Metropolitan Life Ins. Co.* v. *Howle,* 62 Ohio St. 204, 56 N. E. 908; *Gallant* v. *Metropolitan Life Ins. Co.,* 167 Mass. 79, 44 N. E. 1073; *Wills* v. *National Life & Acc. Ins. Co.,* 28 Ohio App. 497, 162 N. E. 822; *Yount* v. *Prudential Life Ins. Co.* (Mo. App.) 179 S. W. 749; *Proppe* v. *Metropolitan Life Ins. Co.,* 13 Misc. 266, 34 N. Y. S. 172; 37 C. J. 462-465, § 179, and cases there cited.

The respondent was justified in its refusal to pay the policies. The evidence that the policies were obtained by misrepresentation being uncontradicted and it being possible to draw only one inference from it,

there was presented a question of law for the court and not a question of fact for the jury.

The order and judgment appealed from is affirmed; respondent to recover its costs.

ELIAS HANSEN, C. J., and FOLLAND, MOFFAT, and WOLFE, JJ., concur.