**BANKERS UNION LIFE INSURANCE COMPANY, a corporation, Appellant,**

v.

**John Lyle MONTGOMERY, Appellee.**

**No. 15918.**

United States Court of Appeals
Ninth Circuit.

Nov. 26, 1958.

Koerner, Young, McColloch & Dezendorf, John Gordon Gearin, James H. Clarke, Portland, Or., for appellant.

Benson & Davis, W. F. Whitley, Alan F. Davis, Portland, Or., for appellee.

Before POPE, CHAMBERS, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

John Lyle Montgomery, beneficiary under a policy of insurance on the life of his deceased wife, brought this action to recover death benefits. Defendant, Bankers Union Life Insurance Company, denied liability on the ground that several representations as to material facts on which it relied in issuing the policy were false. The suit was begun in the circuit court of Oregon for Multnomah County, and was removed to the federal district court because of diversity of citizenship.

The case was tried to a jury. The verdict, which was in the form of answers to special interrogatories, was favorable to plaintiff. Based thereon, judgment was entered for plaintiff in the sum of $30,000, together with attorney's fees in the amount of $5,000 and costs. Defendant appeals, questioning the sufficiency of the evidence to support the verdict, and the admissibility of certain evidence.

█ The policy was issued on October 27, 1954. The insured, Anna Grace Montgomery, died on January 20, 1956, as the result of an accident. On March 12, 1956, appellee submitted proof of death and demanded payment of the policy benefits. The company rejected the demand. It did so on the ground that it was entitled to rescind the policy because of asserted misrepresentations made in the application for insurance. It tendered to Montgomery the amount of premiums which had been paid, with interest, and notified him that the policy had been rescinded. Montgomery rejected the tender and notice.

This controversy led to the present suit and brought into issue the answers which the applicant, Mrs. Montgomery, made to four questions set out in part 1 of the insurance application and one question set out in part 2 of the application. Special interrogatories were submitted to the jury concerning the four questions and answers contained in part 1. As to each of these, the jury found that the answer was material and had been relied upon by the company. It further found, however, that the answer to each was not wilfully false, and as, to one question, that it was not false at all. Appellant contends that the jury findings as to falsity are contrary to the "conclusive and uncontradicted" evidence.

No interrogatory was submitted to the jury concerning the challenged question and answer contained in part 2 of the application. This was apparently due to the fact that this particular question (question 10E of part 2) appears to cover the same ground and to have drawn the same answer as the challenged questions and answers of part 1 of the application.[1] It will therefore not be necessary, in discussing this branch of the case, to give independent consideration to question 10E of part 2.

The questions contained in part 1 which must be examined are numbered 27, 28, 29, and 33. Question 27 reads in part as follows:

> "27. Have you had or have you ever been told you had or have you ever been treated for:
>
> *   *   *   *   *   *
>
> "(e) Epilepsy, mental derangement, nervous prostration, syphilis, paralysis, convlusions, fainting spells?"

Mrs. Montgomery underscored the words "nervous prostration" and answered the question "no."

In arguing that this answer was wilfully false, appellant calls attention to the undisputed evidence that Mrs. Montgomery had been a patient in the psychiatric ward of Holladay Park Hospital. She had been hospitalized there from March 7 to 10, and from April 9 to 22, 1951, a total of approximately eighteen days. Her first visit was for a psychiatric examination. She was taken to the hospital by ambulance in an irrational condition, and was placed behind locked doors in the psychiatric ward. During her second visit she was given five shock treatments.

Her diagnosis on each occasion was "schizophrenia, paranoid type." This is a mental illness involving the functions of the nervous system. There was no organic disturbance of the central nervous system. Before going to the hospital, Mrs. Montgomery had been depressed and withdrawn. She suffered from delusions of persecution and was emotionally upset. While medical opinion expressed at the trial varied, there was testimony that her case was "relatively mild in degree."

According to evidence in the record, Mrs. Montgomery's condition in the spring of 1951 was associated with menopause. A psychiatrist testified that it was accurate to describe her condition at that time as nervous prostration rather than mental derangement. Mental derangement, according to this witness, more accurately refers to an organic disease. Another doctor described her condition as a "nervous breakdown."

Appellee, who is himself a doctor, assisted Mrs. Montgomery in filling out the application. He testified that the "no" was intended as an answer to the question as a whole, but that "nervous prostration" was underlined to indicate an exception.

Considering the form of the question and the physical difficulty to be reported, Mrs. Montgomery was called upon to designate either "nervous prostration" or "mental derangement" in answering question 27(e). The jury apparently accepted appellee's explanation that the answer given was intended to designate

---

1. In its brief, appellant makes reference to paragraph D as well as E of question 10 of part 2 of the application. However, there appears to be no contention that the answer to D, which relates to surgical operations, is false.

"nervous prostration." The verdict indicates that the jury believed Mrs. Montgomery was treated for "nervous prostration" rather than "mental derangement." There is substantial evidence to support these jury findings. Its ultimate finding that the answer to question 27(e) was not wilfully false must therefore be sustained.

Question 28 of part 1 of the application, with the answer thereto in italics, reads as follows:

"28. Name below all causes for which you have consulted a physician or healer in the last ten years; give details: (Include also particulars of any 'Yes' answer to Question 27.)

| Disease or injury (If none, state 'None'): | *Nervousness* | *Suspension (Uterus)* |
|---|---|---|
| Date: | *2 yrs. ago* | *3 yrs.* |
| Duration: | *About 2 mos.* | |
| Complications: | *None* | *None.* |
| Was Operation Performed: | | |
| Results: | *Excellent* | *Excellent.* |
| Name and Address of Attending Physician or Healer: | *Joseph Cooney* | *Dr. Ira Neher*" |

Appellant's objection runs to the answer given with regard to "nervousness," and not to the answer concerning "suspension (uterus)." It is argued in effect that the reference to "nervousness" was false in view of what appellant regards as the more serious nature of Mrs. Montgomery's mental illness.

We do not believe that the jury finding that this answer was not wilfully false must be set aside. The answers to the questions in such an application are not to be read independently of each other. Having underlined "nervous prostration" in her *answer to question 27(e)*, her answer "nervousness," given to question 28, gave the company reasonable notice that what was being referred to was "nervous prostration." As noted above, the jury finding that the latter designation appropriately described Mrs. Montgomery's physical difficulty finds substantial support in the evidence.

It is further contended, however, that it was false to designate Dr. Joseph Cooney as the "attending physician or healer," inasmuch as other doctors also treated Mrs. Montgomery in the psychiatric ward of the hospital.

Dr. Cooney was Mrs. Montgomery's regular doctor. In the spring of 1951 he referred her to Dr. Robert Coen for consultation, advice, and treatment. Dr. Coen was a psychiatrist. At the hospital where Mrs. Montgomery was taken, she was treated by Dr. Coen and by another psychiatrist, Dr. Herman Dickel.

The question called for Mrs. Montgomery to give the name and address of "Attending Physician or Healer." Dr. Louis W. Lee, appellant's medical director, testified that, under the circumstances referred to above, Dr. Cooney would be considered the "attending" physician, and that Dr. Coen and any other doctor whom either of them brought in would be considered "consultants."

The jury finding that the listing of Dr. Joseph Cooney as "attending physician" was not wilfully false thus has substantial support in the record. While the jury did not explicitly find that this answer was not false (absent the consideration of wilfulness), the evidence reviewed above indicates that such a finding would have had to be sustained.[2]

2. We make this observation because of the distinction which is apparently drawn in Oregon between the necessity of showing wilful falsity with regard to answers

Question 29 of part 1 of the application, with the answer shown in italics, reads:

"29. Have you ever had or been advised to have a surgical operation or have you ever consulted any physician for any ailment, not included in any of the above answers? (If yes, give full particulars.) *No*."

Calling attention to the latter part of this question, appellant argues that Mrs. Montgomery had consulted a physician for an ailment "not included in any of the above answers," and that the answer "no" was therefore false. The point which appellant seeks to make is that the answers to questions 27 and 28 did not reveal the serious mental condition concerning which she consulted Drs. Cooney, Coen, and Dickel, and that this serious condition should therefore have been reported in the answer to question 29.

This contention has already been disposed of by what has been said concerning the answers to questions 27 and 28.

Question 33 of part 1 of the application, with the answer shown in italics, reads:

"33. Are there any additional facts or special circumstances known to you which might affect the risk of insurance on your life, and of which the Company should be advised? (If none, please state 'None') *None*."

Appellant argues that this question called upon the applicant to reveal facts relating to her medical history in addition to those called for in questions 27, 28, and 29. Appellant does not specify exactly what additional facts should have been revealed in answering question 33. Presumably, however, the company believes that in her answer to this question Mrs. Montgomery should have disclosed that she had received hospital psychiatric treatment on two occasions in connection with which doctors in addition to

---

pertaining to physical conditions and mere falsity with respect to answers naming doctors who have treated the

her named attending physician had been called in.

The answers to the previous questions informed appellant that Mrs. Montgomery had been treated for nervous prostration with which she had been afflicted for about two months. The company was further advised that her attending physician was Dr. Cooney, and that the results were "excellent."

There is nothing in the record to indicate that the hospitalization and treatment which Mrs. Montgomery received were unusual in cases of "nervous prostration." Hence, advice to the company that she had suffered such an illness was fair notice that hospitalization and shock treatment might have been involved. The company unquestionably would have investigated the reported illness and obtained specific information thereon had not its own medical examination revealed that Mrs. Montgomery was then in good health.

Since questions 28 and 29 called for information concerning doctors, the applicant could hardly be expected to understand question 33 as requiring additional information with regard to doctors.

The jury finding that the answer to this question was not wilfully false has substantial support in the record.

■ The remaining specification of error questions the admissibility of certain testimony given by Dr. Robert C. McGee. This testimony was to the effect that the witness, who was the company doctor, knew, when Mrs. Montgomery consulted him respecting the medical portion (part 2) of the policy application, that she had been confined in Holladay Park Hospital.

Before this question was asked, Dr. McGee in response to another question had stated that he might have discussed with Mrs. Montgomery the filling out of part 2 of the application. However, he was not sure of this. When he was then asked about his knowledge as to Mrs.

---

applicant. See Mutual Life Ins. Co. v. Chandler, 120 Or. 694, 252 P. 559, 560.

Montgomery's hospitalization, counsel for appellant objected on the ground that the information he received from outside sources would not bind the company unless it was disclosed at the time of the examination. The objection was sustained. The doctor was then asked if Mrs. Montgomery had told him that she had been in the Holladay Hospital. He replied that he did not recall.

An offer of proof was later made, at which time the court changed its ruling and held the evidence admissible.[3] Dr. McGee then testified that at the time Mrs. Montgomery was at his office for the examination he had knowledge that she had been in the Holladay Park Hospital. The witness then stated that he did not recall whether Mrs. Montgomery discussed this hospitalization with him at that time.

Appellant argues in effect that this testimony could have been relevant only on the question of notice to the company, but that notice was not an issue in the case. Attention is called to the fact that counsel for appellee assured the court that there was no assertion of waiver or estoppel, and made no suggestion that Dr. McGee's knowledge, if any, could or should be imputed to appellant. Appellant further argues that this testimony was not probative on the question of whether Mrs. Montgomery disclosed the fact of hospitalization, since Dr. McGee could not recall whether she had given him the information.

The trial court apparently received the evidence on the theory that it indicated that Mrs. Montgomery "may have divulged the information to him and he, in his judgment, elected not to put it down." Appellee, on the other hand, appears to argue here that the testimony reveals that the company had notice of the applicant's hospitalization.

Dr. McGee examined Mrs. Montgomery for the company so that part 2 of the application could be filled out. This part is designed to reveal the detailed medical history of applicants. There is no question in part 2 which explicitly calls for information as to prior hospitalization. Question 10E, however, reads: "Have you consulted or been treated by any physician for any ailment or disease not included in your above answers? (If so, give full details.)" Under this question "nervousness" was listed as having occurred "before and after above surgery." The "above surgery" refers to the answer to question 10D, "suspension uterus." The final subdivision of question 10E reads: "Results and, if within five years, name and address of every physician consulted." The answer written here was "Excellent—Dr. Joe Cooney."

The jury could well conclude that had information as to Mrs. Montgomery's hospitalization been deemed material Dr. McGee would have seen to it that this fact was noted under question 10E as one of the "full details," even though information as to hospitalization was not expressly called for. Such a conclusion would have been permissible whether or not Dr. McGee obtained the information from Mrs. Montgomery. While the jury eventually was not called upon to render a verdict as to question 10E, the answer to that question was an issue in the case when Dr. McGee testified.

Thus, without deciding whether the varying reasons for admitting this evidence advanced by the trial court and appellee have merit, the evidence was in any event relevant on the question of materiality. If the company's doctor did not consider the hospitalization information material to any question in part 2 of the application, failure of the appli-

3. The court said in part:
"It seems to me that in view of the witness' statement to the effect that he does not recall exactly whether Mrs. Montgomery told him that she had been to Holladay Park Hospital or whether he knew it from prior contact makes this testimony admissible on the ground that she may have divulged the information to him and he, in his judgment, elected not to put it down."

cant to disclose it could not have been material. Indirectly the testimony would have like relevance with regard to the questions answered in part 1 of the application.

The trial court did not err in admitting the evidence in question.

The judgment is affirmed. Pursuant to ORS 736.325(2), appellee is allowed the sum of one thousand dollars for attorney's fees on appeal.