Argued December 17, 1926, reversed January 25, rehearing denied March 1, 1927.

# THE MUTUAL LIFE INSURANCE CO. OF NEW YORK *v.* HELEN E. CHANDLER.

### (252 Pac. 559.)

**Insurance—False "Warranty" will Avoid Insurance Policy if not Strictly True, but False "Representation" must be Material to Risk.**

1. Warranty in insurance policy is part of contract and must be strictly true or contract is avoided, while representation must be material to risk, since rescission based on false representation is on ground of fraud in negotiation inducing contract.

**Insurance—To Avoid Policy False Representation must be Wilful.**

2. There must be element of wilfulness or knowledge that statement is untrue in order to rescind life insurance policy for false representation.

**Insurance—Failure of Applicant for Life Insurance, Answering Direct Inquiry, to Inform Insurer That He had Consulted Doctor for Tuberculosis, Held to Vitiate Policy.**

3. Failure of applicant for life insurance, in answer to direct inquiry, to inform insurer that he had consulted doctor and received treatment for tuberculosis within five years, *held* to vitiate policy at suit of insurer, after insured died by suicide, where insurer acted as soon as it was informed of false representation, since law requires utmost good faith and full disclosure in answering such inquiry.

---

Insurance, 32 C. J., p. 1274, n. 42, p. 1288, n. 53, p. 1293, n. 24.
Life Insurance, 37 C. J., p. 456, n. 91, p. 463, n. 24, p. 464, n. 25.

From Multnomah: GEORGE G. BINGHAM, Judge.

Department 1.

REVERSED.    REHEARING DENIED.

---

1. Distinction between warranty and representation, see notes in 4 Ann. Cas. 256; 16 Am. Dec. 464. See, also, 14 R. C. L. 1027.

2. See 14 R. C. L. 1025.

3. See 14 R. C. L. 1074.

For appellant there was a brief over the names of *Messrs. McCamant & Thompson* and *Mr. Ralph H. King,* with an oral argument by *Mr. Wallace McCamant.*

For respondent there was a brief over the names of *Mr. Leon W. Behrman, Mr. Stanley Myers* and *Mr. Julius Cohn,* with oral arguments by *Mr. Behrman* and *Mr. Myers.*

BURNETT, C. J.—On January 18, 1922, the plaintiff issued a life insurance policy to Orvin E. Chandler, insuring his life in favor of his wife, the defendant here. It contained a clause reading thus:

"This policy shall be incontestable after two years from its date of issue, except for non-payment of premiums."

The insured died by suicide January 18, 1923, and thereafter the defendant furnished proof of the death and the claimant's certificate in due time according to the terms of the policy. The company refused payment of her claim but she did not bring an action to recover upon the same. Lest it be foreclosed, however, by the lapse of two years from its date of issue to contest the policy, the plaintiff brought this suit to cancel it. All the premiums due by the terms of the policy had been paid. As a preliminary to bringing the suit, the plaintiff tendered to the beneficiary the return of those premiums with interest thereon from the date of their payment, but she refused them and they were brought into court.

The basis of the plaintiff's contest is that in the application the assured was required to answer cer-

tain questions and in the same application admittedly agreed as follows:

"All the following statements and answers and all those that I make to the company's medical examiner in continuation of this application, are true and are offered to the Company as an inducement to issue the proposed policy."

The interrogatories principally relied upon with their answers are these:

"17. What illnesses, diseases, injuries or surgical operations have you had since childhood?

"A. Influenza, Sept. 1921, duration one week, mild, resulting in recovery; tonsilitis, one attack, September, 1921, one week duration, moderate resulting in recovery, the tonsils being removed. Did not stop work.

"18. State every physician or practitioner who has prescribed for or treated you, or whom you have consulted in the past five years.

"A. None except Dr. Cathey, Morgan Bldg., August, 1921, tonsils removed.

"19. Have you stated in answer to question 17 all illnesses, diseases, injuries or surgical operations which you have had since childhood?

"A. Yes.

"20. Have you stated in answer to question 18 every physician and practitioner consulted during the past five years and dates of consultation?

"A. Yes."

The making and delivery of the policy, the death of the assured and the tender, refusal and profert of the premiums are all admitted. Further answering, the defendant filed a cross-bill for the recovery of the amount she alleges is due on the policy. Her cross-bill was traversed by the reply.

It is provided in the policy as follows:

"This Policy and the application herefor, copy of which is endorsed hereon or attached hereto, constitute the entire contract between the parties hereto. All statements made by the Insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement of the Insured shall avoid or be used in defense to a claim under this Policy unless a copy of the application is indorsed on or attached to this Policy when issued."

There is some dispute about whether the assured had tuberculosis, infection of the "hilus gland" (so called in the complaint) and chronic cough, but it is uncontroverted in the testimony that almost coeval with or at least a short time before the assured made application for a policy, he had consulted a physician other than the one named in the application and had taken treatment from him for tuberculosis.

1. One difference between a warranty and a representation is that the former is a part of the contract and must be strictly true, else the contract is avoided whether the statement therein warranted is essentially material to the risk or not. On the other hand, a representation must be material to the consideration of the risk but if false, being material, it amounts to legal fraud and will avoid the contract. In the first, materiality is not necessarily essential, but in the latter it is indispensable: *Buford* v. *New York Life Ins. Co.*, 5 Or. 334. If a representation is material to the risk and likewise false, it will be as potent for rescission of the contract embodied in the policy as if the untrue statement was in form a warranty. The remedy on the warranty proceeds upon the theory of breach of the contract constituting a defense against its enforcement. On the other hand, the cynosural feature of a false representation

is fraud in the negotiations materially inducing the formation of the contract and furnishing ground for its rescission or resistance to its enforcement. The issue in the instant case, therefore, depends upon whether an untrue answer to the question about his having consulted other physicians is material.

2, 3. We may lay aside the question whether in fact the assured was afflicted with tuberculosis or inflammation of the "hilus gland," with the observation that the weight of authority is that there must be an element of wilfulness or knowledge that the statement on that point is untrue, in order to bind the assured. The reason of this is that many times a person may be afflicted with a disease, at least in its incipient stages, without being aware thereof and may answer in good faith that he has not had any such disease. The representation, however, that he has not consulted or been treated by any other physician is one peculiarly within his knowledge and the law requires in such a case the utmost good faith and full disclosure in answer to direct inquiries on the part of one making an application for the policy.

It was held in *Williams* v. *Mutual Life Ins. Co. of New York,* 61 Mont. 66 (201 Pac. 320), that:

"Concealment by applicant for insurance of the fact that in the preceding year he consulted two doctors, and during several months was treated by one of them, held fraudulent."

In *Lewis* v. *New York Life Ins. Co.,* 201 Mo. App. 48 (209 S. W. 625), a policy of this kind was involved and it was there ruled that:

"Insured's statement in application for life policy that he had consulted but one physician when in fact he had consulted a number related to a matter forming the very basis or foundation of the contract, and

worked a legal fraud on the company whether applicant intended to deceive or not.''

In that instance as in this case no dispute arose about the applicant having previously consulted more physicians than he named in his application. There was a conflict, however, in the testimony about whether in fact he was afflicted with the disease mentioned. The court, in discussing the matter, used the following language:

''It is not a question of whether these consultations were for Bright's disease or whether he was suffering therefrom or his death hastened thereby; nor is it a question of whether he thought these consultations were material or not. He was answering questions which the company wanted to know the truth about before it would enter into the contract. It had the right to know the truth in order that it could decide for itself whether it would insure him or not. If it had known he had consulted various other doctors recently and for other matters, it could have investigated on its own account and decided for itself whether it would take him as a risk. Nor would it have been necessary then to establish beyond doubt that he was in fact suffering with a serious and insidious disease; for at that time the company had not entered into the contract, could not be compelled to do so, and could be as 'squeamish' about accepting him as a risk as it desired to be. If it was fearful that he might have incipient Bright's disease, it could have refused the insurance though all the world said he did not have it. To allow him to refrain from giving full, true, and complete answers to the specific questions then asked, on the ground that he did not think the answers material, would be to let him decide for the company whether it should undertake the risk.''

In the instant case, the assured did not die of tuberculosis or any of the diseases involved in the

inquiry, but that is not the question. The parties were negotiating for the purpose of making a contract of insurance. Each was entitled to the exercise of the utmost good faith on the part of the other. The assured had made an offer to the company couched in certain terms. He said, in substance, ''I am a man who has consulted only one physician whom I name and that merely for mild attacks of influenza and tonsilitis which did not prevent me from working at my usual occupation.'' Possibly without wicked intention he neglected to state the names of the other physicians with whom he had consulted and who had treated him for tuberculosis. While he might have been ignorant of the existence of the disease, he was not ignorant of the fact he had consulted and taken treatment from at least one other physician. Having directly asked for it, the company had the right to know the exact truth on that subject. It was entitled to a fair offer without concealment, so that it could use its own election about accepting that offer. The record shows that this was urged as soon as it became known to the company. There is no waiver of this condition shown or pleaded on the part of the defendant. The concealment of the fact peculiarly within his knowledge that he had consulted other physicians was to stifle legitimate inquiry on the part of the insurer while the negotiation was yet in the formative stage.

Some precedents have been cited where the question was one of fact whether the defendant had the disease or not, or whether the physician was in fact consulted or not, and, on the ground that there was evidence entitled to go to the jury making it a question of fact to be determined, the courts have upheld recoveries against the insurer; but where a direct question is

asked by the very terms of the policy a true answer is made material. In this case there is no dispute and the court also found that the assured did, indeed, consult other physicians and was treated by them and that information was withheld from the company. Under such a state of facts the very great weight of well-considered cases is to the effect that it amounts to legal fraud, vitiating the policy. To hold otherwise would take from any party considering an offer the right to accept or reject the same, and this too at the behest of the other party, although the latter had stifled investigation by the concealment of matters which would naturally challenge the consideration of the other. The following authorities will be helpful in the consideration of the case: *Germania Life Ins. Co.* v. *Klein* (1913), 25 Colo. App. 326 (137 Pac. 73, 76); *Mutual Life Ins. Co.* v. *Hurni Packing Co.* (1919 C. C. A. 8th), 260 Fed. 641, 645; *Ebner* v. *Ohio State Life Ins. Co.* (1918), 69 Ind. App. 32 (121 N. E. 315, 322); *Philadelphia Fidelity Mut. Assn.* v. *McDaniel* (1900), 25 Ind. App. 608 (57 N. E. 645); *Mutual Life* v. *Mullen* (1908), 107 Md. 467 (69 Atl. 385, 389); *Loving* v. *Mutual L. Ins. Co.* (1922), 140 Md. 173 (117 Atl. 323, 325); *Kerpchak* v. *John Hancock Mut. L. Ins. Co.* (1922), 97 N. J. L. 196 (117 Atl. 836, 837); *Hubbard* v. *Mutual Reserve Fund L. Assn.* (1900, C. C. A. 1st), 100 Fed. 719, 726; *Harris* v. *New York Life Ins. Co.* (1920), 86 W. Va. 638 (104 S. E. 121, 124); *Myers* v. *Mutual Life Ins. Co.* (1919), 93 W. Va. 390 (98 S. E. 424, 427); *Mutual Life Ins. Co.* v. *Leaksville Woolen Mills* (1916), 172 N. C. 534 (90 S. E. 574, 576, 577); *Price* v. *Phoenix Mutual Life Ins. Co.* (1871), 17 Minn. 473, 485, 486 (10 Am. Rep. 196); *Campbell* v. *New England Life Ins. Co.* (1867), 98 Mass. 381, 402; *Smith* v. *North American*

*Accident Ins. Co.* (1922), 46 Nev. 30 (205 Pac. 801, 805).

The decree is reversed and one here entered in favor of the plaintiff canceling the policy.

Reversed and Decree Entered.    Rehearing Denied.

Bean, Rand and Coshow, JJ., concur.