Argued February 2, affirmed April 21, 1965

# LEIGH *v.* CONSUMERS NATIONAL LIFE INSURANCE COMPANY

401 P. 2d 46

*Julian Herndon, Jr.,* Portland, argued the cause for appellant. With him on the briefs were Buss, Pihl & Herndon, Portland.

*Herbert H. Anderson,* Portland, argued the cause for respondent. With him on the brief were Koerner, Young, McColloch & Dezendorf, Portland.

Before McAllister, Chief Justice, and Perry, O'Connell, Denecke and Lusk, Justices.

PERRY, J.

The plaintiff Patricia Marie Leigh is the named beneficiary under a life insurance policy issued March 12, 1962, by the defendant upon the life of Palmer Ellis Leigh, her husband. Palmer Ellis Leigh died, the defendant denied liability upon the contract of insurance, and this action was commenced by the plaintiff. After both parties had rested, the defendant moved for a directed verdict in its favor. At plaintiff's request, the motion was denied and the jury returned a verdict for the plaintiff. The defendant thereupon moved for a judgment *non obstante veredicto,* which was granted, and the plaintiff appeals.

The defendant based its defense upon the fact that the deceased Palmer Ellis Leigh made false representations to the defendant in the procurement of the policy.

The application, among others, contained the following questions:

"1. Have you ever had or been told you had—
"*    *    *    *    *

"C. Disorder of stomach, intestines, liver, gall bladder, or ulcer, indigestion, or other disease of digestive tract?
"*    *    *    *    *

"8.c. Have you ever taken treatment or a 'cure' for alcoholism or drug addiction?"

The applicant answered both questions in the negative.

The evidence discloses that on August 3, 1950, the deceased made a voluntary application for admission to the state of Washington's Northern State Hospital in Sedro Wooley, Washington, because of "persistent alcoholism". On May 12, 1961, he entered Emmanuel Hospital in Portland complaining of abdominal pains and he remained in the hospital until May 27, 1961. The hospital records disclose he was suffering from a collapsed right lung, and, while there, also suffered from delirium tremens due to withdrawal from alcohol. He returned to the hospital nine days later because of a recurrence of the collapsed lung, which was later repaired by an operation.

While the deceased was in the Emanuel Hospital, and prior to being operated upon by Dr. Toon, Dr. Goldberg was called into consultation. Dr. Goldberg testified that from the history he had received from the plaintiff he felt there was a likelihood of a "liver involvement"; that he made his tests and was of the opinion that the deceased had alcoholic cirrhosis, sometimes called Laennec's cirrhosis, and that he told both the deceased and the plaintiff of his opinion. An autopsy by Dr. Toon confirmed the opinion of Dr. Goldberg.

These facts are not in anywise contradicted by the plaintiff and they clearly disclose that the deceased gave false answers in his application.

The plaintiff contends that, since Dr. Toon testified that most alcoholics do not believe they are thus afflicted and also since the doctors testified that de-

ceased's liver condition improved while he was in the hospital and they informed deceased of this fact, the jury could find that deceased did not intentionally misrepresent his physical condition in the application for insurance. Thus, plaintiff contends, a question of fact was present for the jury's consideration.

The difficulty with the plaintiff's position is that the questions asked did not go entirely to the proposition of whether or not the deceased believed he was or was not in fact an alcoholic or whether or not he believed he had Laennec's cirrhosis. The thrust of the questions was twofold and one portion was directed to whether or not he had been treated for alcoholism or had been told he had a liver condition. Therefore, the issue presented was not alone a question of whether the deceased was in fact an alcoholic or suffered a disease of the liver.

The insurer had a right to know of these additional facts as to prior treatment and information known to the applicant so that it could investigate these facts and from this investigation determine for itself whether it would or would not accept the applicant as a risk.

The plaintiff fails to draw the distinction between an assured's representations as to his state of health and representations as to facts peculiarly within his own knowledge which may disclose his state of health. ■ In the former, a person may be afflicted with a disease that has, at least in the primary stages, failed to indicate its presence in the body, and an applicant may, therefore, in complete honesty and in good faith state he is in good health or has not a particular disease. When the representation is as to the state of health, the burden is upon the insurer, in seeking can-

cellation of the policy or denying liability thereunder, to establish, not only the falsity of representation, but that the false representation was knowingly made. *Mutual Life Ins. Co. v. Muckler*, 143 Or 327, 21 P2d 804.

■■ In the latter case, the applicant, because of his knowledge of the facts, is required to make in good faith full disclosure in answering the direct questions, and failure to do so is recognized in the law as fraud, vitiating the policy.

> "* * * a representation must be material to the consideration of the risk but if false, being material, it amounts to legal fraud and will avoid the contract. * * *" *Mutual Life Ins. Co. of N. Y. v. Chandler*, 120 Or 694, 697, 252 P 559.

■ No question is raised by the plaintiff as to the materiality of the representation, but it is so apparent that the purpose of the question was to elicit information which might be investigated by the proposed insurer for the purpose of determining whether the physical and mental health of the insured was such as to justify the risk assumed, there is no doubt in our minds that representation was material.

The evidence of the falsity of the representations being uncontroverted, there was no issue of fact to present to the jury.

The judgment of the trial court is affirmed.