Argued March 7, reversed April 19, 1977

SANTILLI, *Appellant,*
*v.*
STATE FARM LIFE INSURANCE COMPANY,
*Respondent.*
(No. CC 75-252, SC 24510)
562 P2d 965

D. Richard Fischer, of Anderson, Fulton, Lavis and Van Thiel, Astoria, argued the cause and filed a brief for appellant.

Vawter Parker, Portland, argued the cause for respondent. With him on the brief were James H. Clarke, Edwin A. Harnden, and Dezendorf, Spears, Lubersky & Campbell, Portland.

HOWELL, J.

## HOWELL, J.

Plaintiff appeals from a summary judgment entered in favor of defendant in an action to recover on a life insurance policy issued by the defendant insurance company on plaintiff's husband. The facts are not in dispute and were presented to the trial court by stipulation.

In November, 1972, plaintiff's husband, Edward Santilli, made application to State Farm Life Insurance Company to purchase a mortgage life insurance policy. Mr. Santilli was quoted a "standard" premium of $120.40 per year. However, as a result of disclosures on the application form, the defendant insurance company required him to have a medical examination. It then learned that plaintiff's husband had been treated for high blood pressure and that there was a history of high blood pressure in his family. Defendant then rated the policy as a "Table 4," increased the premium to $223.80 per year and excluded the waiver of premium in event of disability clause.

The policy was issued in January, 1973, but was backdated to December 19, 1972. The second year's premium was not paid, and on January 24, 1974, the defendant insurance company notified plaintiff's husband that the life insurance policy had lapsed but offered to reinstate the policy without evidence of insurability if the premium was paid by February 9, 1974. If the premium was not paid by February 9, the policy could be reinstated only by filling out an application for reinstatement and showing evidence of insurability.

Plaintiff's husband did not pay the premium prior to February 9, and the policy lapsed. However, on February 15, 1974, six days after the "late payment offer" expired, plaintiff's husband paid the full premium and caused the reinstatement application to be filled out. The policy was reinstated on February 26, 1974.

Plaintiff's husband died on November 11, 1974, apparently of a heart attack. The defendant investigated plaintiff's claim as beneficiary of the policy and discovered that, contrary to the reinstatement application, the deceased husband had seen a doctor on six occasions in 1973, and, as a result, defendant denied plaintiff's claim under the policy.

Plaintiff's complaint alleged two causes of action: the first cause sought the amount due under the policy and attorney fees, and the second cause sought compensatory and punitive damages for an alleged bad faith failure to pay plaintiff's claim. Defendant demurred to plaintiff's second cause of action, and the trial court sustained the demurrer. Defendant then moved for summary judgment on plaintiff's first cause of action, and plaintiff agreed to litigate the remaining issues in that fashion. After hearing an oral summary of the evidence which the parties stipulated would be produced at trial, and after reviewing the exhibits submitted, the court granted defendant's motion for summary judgment. Plaintiff assigns as error both the order granting defendant's motion for summary judgment on plaintiff's first cause of action and the order sustaining defendant's demurrer to her second cause of action.

Pursuant to ORS 18.105(3), a motion for summary judgment will be granted only if the pleadings and the evidence produced at the hearing on the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is undisputed that incorrect answers were recorded in response to several of the questions on the application for reinstatement of the deceased's life insurance policy. Defendant contends that these incorrect answers relieve it of its duty to pay plaintiff's claim. ORS 743.042 provides that:

"(1)* * * Misrepresentations, omissions, concealment of facts, and incorrect statements [in any applica-

tion for an insurance policy] shall not prevent a recovery under the policy unless * * *

"* * * * *.

"(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer."

██ It is clear that false information submitted by a prospective insured may bar recovery under the statute if that information was "material." *Bunn v. Monarch Life Insurance,* 257 Or 409, 478 P2d 363 (1971); *Leigh v. Consumers Nat. Life Ins. Co.,* 240 Or 290, 401 P2d 46 (1965); *Mutual Life Ins. Co. of N.Y. v. Chandler,* 120 Or 694, 252 P 559 (1927). Although the materiality of the false information is normally a question of fact, under some circumstances the misrepresentations may be found to be material as a matter of law. *Knight v. Continental Casualty,* 259 Or 46, 485 P2d 403 (1971). However, the burden of proving the materiality of the misrepresentations involved always rests on the insurer who seeks relief from its responsibilities under the insurance agreement. *Bunn v. Monarch Life Insurance, supra* at 412; E. Patterson, Essentials of Insurance Law 426, § 82 (2d ed 1957); W. Vance, Insurance 408, § 70 (3d ed 1951). Therefore, the issue on appeal in this case is whether the defendant insurer has carried its burden of proving the materiality of the misrepresentations as a matter of law so as to be entitled to a summary judgment.

█ In this context, a false representation is material only if the insurer would not have accepted the application at the premium stated had a truthful answer been given. *Bunn v. Monarch Life Insurance, supra* at 412. As stated in *Patterson, supra* at 415:

"This test conforms to the basic principle of rescission for misrepresentation, that the party misled should have the right to avoid the contract if but for the misrepresentation he would not have given his assent to its terms. This test of materiality has considerable support in judicial precedents involving transactions other than insurance contracts. The law is not concerned with punishing careless misstatements, nor even willful ones, in actions designed for the enforcement of private rights.

[ 57 ]

It is not enough for a party to a contract to prove that in some detail the other party made a misstatement; the former should be prepared to show that the misstatement made a serious difference to him. The strong public policy that supports the enforcement of contracts as made can be outweighed only by showing that the party seeking to avoid the contract was really misled, that is, that he would not have made the contract if he had known the facts misrepresented." (Emphasis deleted.)

Thus, in order to avoid its obligations under this contract, the defendant insurer was required to prove that it would not have accepted plaintiff's husband's application for reinstatement if it had received correct answers to each of the questions involved.

The defendant, however, has offered no proof on this issue. Consequently, unless we can say that it is a matter of common knowledge that the defendant insurer would not have reinstated the policy at the premium quoted if a full disclosure had been made, the defendant was not entitled to summary judgment. *See Knight v. Continental Casualty,* 259 Or at 50.[1]

Under the circumstances of this case, we cannot say that plaintiff's husband's false representations were material as a matter of law solely on the basis of our own general knowledge of insurance practices. The misrepresentations involved in this case relate only to changes in the deceased's health since the time he

---

[1] "* * * It is common knowledge that an insurance company will not issue a policy of insurance or will issue only a qualified policy if the company knows that the applicant has certain serious symptoms relevant to the type of coverage offered under the policy. Thus it would be clear that a company would not issue a health and accident policy to an applicant who revealed that he had terminal cancer. At the other extreme, it is equally clear that the company would issue an unqualified policy if the applicant's only affliction is a bad cold. Between these two extremes there will be variations in the degree of the seriousness of the applicant's affliction. Some of the variations will be such that the court, drawing upon its knowledge of business practice, would be entitled to rule as a matter of law that the failure to reveal information in response to the question in the application is or is not material. When the court does not have such knowledge, the insurer must adduce evidence to establish the fact and the claimant may rebut it with other evidence."

initially applied for insurance coverage and underwent a thorough medical examination.[2]

When viewed in the light most favorable to plaintiff,[3] the evidence indicates that the deceased's health underwent no substantial change during that period. Although plaintiff's husband did not disclose that he had been seeing a physician regularly about high blood pressure and had been on medication to reduce his blood pressure, this condition was apparently substantially the same as it was at the time of the previous medical examination. At that time, the defendant insurer learned of the high blood pressure condition and that plaintiff's husband had been taking medication to control it for several years. It also learned that plaintiff's husband had a weight problem. These facts did not cause the insurer to refuse coverage, but, instead, the policy was issued at a much higher premium. When plaintiff's husband applied for reinstatement of his original policy, he agreed to

---

[2]It appears that the deceased incorrectly answered each of the following questions on the reinstatement application:

"2. During the past five years, or since originally applying for this policy if such period is less than five years, have any of the persons to be insured:

"* * * * *.

"e. had any change in weight, or been under restriction of diet for any cause?

"f. been advised to take insulin, oral diabetic drugs, or drugs for control of blood pressure?

"* * * * *.

"i. had any medical examiner or physician express an unfavorable opinion on insurability or health?

"5. During the past five years, or since originally applying for this policy if such period is less than five years, have any of the persons to be insured had or been observed or treated for:

"a. high blood pressure, rheumatic fever, heart murmur, or chest pain?

"* * * * *.

"6. During the past five years, or since originally applying for this policy if such period is less than five years, have any of the persons to be insured consulted a physician for any reason not indicated in previous questions?"

[3] See United States v. Diebold, Inc., 369 US 654, 82 S Ct 993, 8 L Ed 2d 176 (1962).

continue paying this enhanced premium. Since the defendant insurer had previously agreed to issue plaintiff's husband a policy at this higher premium level after full disclosure, we cannot say, as a matter of law, that it would have refused to reinstate that policy if it had known that plaintiff's husband had continued to receive treatment for his high blood pressure condition.

Moreover, if correct answers to defendant's questions had been given, upon further inquiry the defendant insurer would have learned that plaintiff's husband had been successful in reducing his weight and in cutting back on his smoking and drinking during the intervening period. Significantly, it was stipulated that the doctor who had treated plaintiff's husband would have testified that there was "no medical evidence that [his] health deteriorated in any way between 1972 and 1974." Under these circumstances, and in the absence of any evidence from the defendant insurer that reinstatement of the policy would have been refused if it had received correct answers to all questions on the reinstatement application, we cannot say that the incorrect answers were material as a matter of law. Therefore, we conclude that defendant's motion for summary judgment was improperly granted, and that plaintiff is entitled to a new trial.

5. Plaintiff also contends that the trial court erred in sustaining defendant's demurrer to plaintiff's second cause of action. Plaintiff's second cause of action alleged that:

"II.

"The defendant's refusal to pay the proceeds due plaintiff under the life insurance policy issued to the insured was made in bad faith, was made intentionally, willfully and wantonly without a reasonable investigation by defendant of the facts involved in the claim, and was a willful denial of the plaintiff's rights under the insurance contract.

"III.

"As a result of defendant's conduct, the plaintiff has

suffered mental distress and anguish to her general damage in the amount of ONE THOUSAND DOLLARS ($1,000.00), and plaintiff is entitled to punitive damages in the sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00). * * *."

Plaintiff seeks to have this court recognize a cause of action for tortious breach of an insurer's duty of "good faith and fair dealing" when dealing with its insured. This is a distinct tort which has recently emerged in California and has subsequently found favor in some other jurisdictions. *See Silberg v. California Life Ins. Co.,* 11 Cal 3d 452, 113 Cal Rptr 711, 521 P2d 1103 (1974); *Gruenberg v. Aetna Insurance Co.,* 9 Cal 3d 566, 108 Cal Rptr 480, 510 P2d 1032 (1973); *Fletcher v. Western National Life Ins.,* 10 Cal App 3d 376, 89 Cal Rptr 78, 47 ALR3d 286 (1970).[4]

This tort developed as an outgrowth of the cause of action for an insurer's bad faith refusal to settle within the coverage limits of a liability insurance policy. *See, e.g., Groce v. Fidelity General Insurance,* 252 Or 296, 448 P2d 554 (1969); *Radcliffe v. Franklin Nat'l Ins. Co.,* 208 Or 1, 298 P2d 1002 (1956). However, although the two situations are somewhat similar, there is a distinct difference between liability insurance and other types of policies which should not be overlooked.

When an insured purchases liability insurance, he relinquishes his right to control any litigation brought against him for conduct which is covered under the

---

[4] *See also Escambia Treating Co. v. Aetna Casualty & Surety Co.,* 421 F Supp 1367 (ND Fla 1976); *United Services Auto. Ass'n v. Werley,* 526 P2d 28 (Alaska 1974); *John Hancock Mut. Life Ins. Co. v. McNeill,* 27 Ariz App 502, 556 P2d 803 (1976); *Ledingham v. Blue Cross,* 29 Ill App 3d 339, 330 NE2d 540 (1975); *United States Fidelity & Guaranty Co. v. Peterson,* 91 Nev 617, 540 P2d 1070 (1975); *State Farm Gen. Ins. Co. v. Clifton,* 86 NM 757, 527 P2d 798 (1974). *Cf. Norfolk & Dedham Mutual Fire Ins. Co. v. Cumbaa,* 128 Ga App 196, 196 SE2d 167 (1973) (applying statute); *Mathews v. Travelers Ins. Co.,* 212 Kan 292, 510 P2d 1315 (1973) (applying statute); *Citizens Discount and Investment Corp. v. Dixon,* 499 SW2d 231 (Mo App 1973) (applying statute); 3 J. Appleman, Insurance Law and Practice, § 1601, *et seq.* (1967).

policy, and he loses his right to negotiate a settlement with the opposing party. Moreover, when the settlement value of a case approaches the policy limits, it becomes increasingly more tempting for the insurer to gamble on the results of litigation, for in refusing to settle under such circumstances, the insurer stands to lose little and gain much. The insured, however, has a strong interest in settlement so as to avoid a judgment in excess of his coverage. Because of this conflict, courts have held insurers to a high duty of good faith and fair dealing when conducting settlement negotiations on behalf of their insured.

Such considerations are not applicable outside the field of liability insurance. In cases involving the insurer's duty to pay under policies for theft, fire, health, disability or life insurance, the unique relationship which gives rise to the special duty of liability insurers to attempt to settle within their policy limits does not arise. The insured, or his beneficiary, is not subject to the imposition of excess liability, and his rights and responsibilities are limited to those set forth in his contract.[5]

However, it is not necessary for us to decide in this case whether this new tort should be recognized in this jurisdiction for, in our view, plaintiff would not have been entitled to prevail on such a cause of action even

---

[5] On the other hand, it has been argued that the huge financial reserves of large insurance companies give them an advantageous bargaining position when dealing with injured policyholders who purchased insurance to avoid payment of the ruinous bills which now suddenly face them. *See McDowell v. Union Mutual Life Ins. Co.,* 404 F Supp 136, 141 (CD Cal 1975). Apparently, some insurance companies have taken advantage of this superior bargaining position and have sought to force their insureds to settle for significantly less than they were entitled to through deliberate patterns of harassment and delay. *See, e.g., Silberg v. California Life Ins. Co.,* 11 Cal 3d 452, 113 Cal Rptr 711, 521 P2d 1103 (1974); *Gruenberg v. Aetna Ins. Co.,* 9 Cal 3d 566, 108 Cal Rptr 480, 510 P2d 1032 (1973); *Richardson v. Employers Liability Assurance Corp.,* 25 Cal App 3d 232, 102 Cal Rptr 547 (1972); *Fletcher v. Western Nat'l Life Ins. Co.,* 10 Cal App 3d 376, 89 Cal Rptr 78, 47 ALR3d 286 (1970); *United Services Auto. Ass'n v. Werley,* 526 P2d 28 (Alaska 1974). Accordingly, the imposition of additional tort liability was found to be necessary in these cases in order to adequately protect the policyholders who found themselves subjected to such conduct.

if we were to adopt it. Although plaintiff's complaint alleges that defendant's decision to refuse to pay the policy's death benefits was made in "bad faith" and was a "willful denial of the plaintiff's rights under the insurance contract," the stipulated facts clearly show that the defendant had just cause for contesting liability when it learned of the false answers on the deceased's reinstatement application. It is apparent that there is a valid question in this case as to whether the admittedly false answers were sufficiently material to allow the defendant insurer to avoid this contract. Under such circumstances, the defendant would have been entitled to prevail as a matter of law on plaintiff's second cause of action if the demurrer had not been sustained. Although the stipulated facts did not come in until after the trial court granted the demurrer, we feel that it is clear from the stipulation that if the trial court did err in sustaining the demurrer, such an error was clearly harmless.

Reversed.