Neal A. PEARSON, Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT INSURANCE CO., a Tennessee corporation, UnumProvident Corporation, a Delaware corporation, Defendants.

Civil No. 01–1202–AS.

United States District Court,
D. Oregon.

March 17, 2004.

**1200**

Gary M. Bullock, Bullock & Regier, PC, Portland, OR, for Plaintiff.

Katherine S. Somervell, Robert B. Miller, Bullivant Houser Bailey, PC, Robert C. Muth, Kilmer Voorhees & Laurick, Portland, OR, for Defendants.

## OPINION AND ORDER

ASHMANSKAS, United States
Magistrate Judge:

Defendants Provident Life and Accident Insurance Co. ("Provident") and Unum-Provident Corporation ("Unum")(collectively "Defendants") move to dismiss Unum as an improperly named defendant in this action filed by plaintiff Neal A. Pearson ("Plaintiff"). Additionally, Defendants move to dismiss all but one of the claims asserted against them in the Second Amended Complaint filed with the court on June 20, 2003 (the "Complaint"). Defendants argue that Plaintiff has failed to state claims for: 1) violation of 18 U.S.C. § 1962(c), which is part of the federal Racketeering Influenced and Corrupt Organization Act (18 U.S.C. § 1961 *et seq.*)("RICO")(First Claim for Relief); 2) conspiracy to violate RICO (Second Claim for Relief); 3) breach of implied provisions of an insurance contract (Third Claim for Relief, Count Two); 4) estoppel (Third Claim for Relief, Count Three); 5) common law fraud by concealment (Fourth Claim for Relief); 6) common law fraud by active misrepresentation (Fifth Claim for Relief); and 7) unlawful business practices under the Tennessee Consumer Protection Act (TCA § 47–18–101 *et seq.*)(the "Tennessee Act") (Sixth Claim for Relief). Defendants do not move against Plaintiff's original claim for breach of contract based on Provident's denial of Plaintiff's claim for permanent disability benefits (Third Claim for Relief, Count One).

### Background

Plaintiff developed a process to freeze baked potatoes that reduced the time required to reheat and serve the potatoes to the ultimate consumer. Plaintiff built a plant and designed and manufactured the machinery necessary to produce the frozen baked potatoes. In 1982, a Japanese corporation and primary client of Plain-tiff's corporation, Enway, purchased a controlling interest in the company. Plaintiff continued as CEO of Enway and was responsible for executive management, problem resolution and planning and interacting with customers, suppliers and regulatory agencies. However, Enway was controlled by the majority shareholders in Japan.

In February 1988, Plaintiff purchased a disability insurance policy from Provident that protected Plaintiff in the event he became unable to "perform the substantial and material duties" of his occupation as CEO of Enway and he was "receiving care by a Physician which is appropriate for the condition causing the disability" (the "Policy"). The Policy was effective for a one-year term ending in February 1989 and was renewable on a annual basis by timely payment of the premium. Provident sent an annual renewal notice to Plaintiff and Plaintiff renewed the Policy annually by forwarding a payment to Provident.

In October 1998, Plaintiff suffered from depression and began seeing a psychiatrist. Plaintiff's condition worsened despite treatment and on August 31, 1999, Plaintiff quit his job as a result of his depression and filed a claim with Provident for disability benefits. The majority shareholders in Japan decided to close the plant the following day.

Plaintiff's disability claim was initially denied but, after additional review, Defendants conditionally accepted liability under the Policy. In July 2000, Defendant initiated the payment of disability benefits for the period beginning on February 28, 2000. Shortly thereafter, Defendant engaged in some additional investigation and arranged for Dr. Les Goldman and Dr. Eric Goranson to perform independent psychological examinations of Plaintiff on behalf of Defendants. Dr. Goldman opined that, while

depressed, Plaintiff was capable of engaging in consulting work but that he was choosing not to work. Dr. Goranson did not find "convincing evidence" that Plaintiff was severely depressed. Based on these opinions, Defendants informed Plaintiff that he did not qualify for total disability benefits under the policy and that his disability benefits would cease effective April 28, 2001.

Plaintiff filed an action for breach of the Policy in state court in June 2001. Defendant removed the action to this court in a timely manner. By Opinion and Order dated May 6, 2002, this court found that Plaintiff failed to met the Policy definition of "totally disabled" and granted summary judgment in favor of Defendants. Plaintiff appealed and, on April 7, 2003, 62 Fed. Appx. 777 (9th Cir.2003), the Ninth Circuit reversed and remanded the action finding that "[t]here remains a material dispute of fact as to whether Pearson is capable of performing the duties of the occupation, rather than merely the particular job at Enway, given the unusual and noncustomary way he performed that job."

On remand, Plaintiff filed the Complaint, which added claims for breach of implied contact, estoppel, RICO violations, fraud and violation of the Tennessee Act. In support of the new claims, Plaintiff alleges that Unum, as the claims handler for Provident, targeted Plaintiff's disability claim for termination because it had such a high reserve requirement. Unum then hired doctors from GenEx, one of its subsidiaries, to perform independent psychological examinations of Plaintiff and directed the doctors to suggest that if Plaintiff received the recommended treatment for his depression on a more frequent basis, or received a different more appropriate treatment, he would no longer be disabled. Based on these reports, Defendants then found that Plaintiff was not "totally dis-

abled" under the terms of the Policy and denied his disability claim for all future payments. Plaintiff asserts that the scheme to prevent Plaintiff from receiving benefits under the Policy existed during the period Plaintiff was electing to renew his Policy on an annual basis and that Defendants' failure to advise Plaintiff of the scheme was intentional and fraudulent. Additionally, Plaintiff alleges that Defendants have employed the scheme in denying several other claims for disability benefits under their policies.

*Legal Standard*

Defendants' motion to dismiss for failure to state a claim challenges the legal sufficiency of the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Because the court rules before it receives any evidence, such motions are disfavored. C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 (1984). For purposes of the motion, the factual allegations in the complaint are presumed to be true and are viewed in the light most favorable to the non-moving party. *Cassettari v. County of Nevada*, 824 F.2d 735, 737 (9th Cir.1987). A motion to dismiss under Rule 12(b)(6) will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986), cert den., 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). The question is not whether the plaintiff ultimately will prevail, but whether he cannot possibly prevail even if the allegations in the complaint are assumed to be true. The court may not dismiss a claim merely because the pleadings indicate that the likelihood of prevailing is remote. See *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. Nor, at this stage of the proceedings, does the court consider whether there is any evidence to

support the allegations that have been made in the complaint.

## Discussion

### Dismissal of Unum as a Defendant

Defendants contend that, because Unum did not exist until June 30, 1999, after Plaintiff renewed the Policy for the final time, there is no contractual privity between Plaintiff and Unum. Plaintiff appears to concede this issue, assuming that the June 1999 date is correct, but argues that Unum remains liable on the claims relating to the handling of Plaintiff's disability claim, all of which occurred after June 1999. Plaintiff then seeks to amend the Complaint to include allegations that Unum was actually formed no later than December 1996 under the name Provident Companies, Inc., and that it merely changed its name in June 1999. Defendants do not object to this amendment in their responsive memorandum or address Plaintiff's argument that Unum is a proper defendant based on the new date. Accordingly, the court will allow Plaintiff to amend the Complaint to state the proper incorporation date for Unum and denies Defendants' motion to dismiss Unum from this action.

### First and Second Claims for Relief— RICO Violations

■ Defendants assert that the McCarran–Ferguson Act (15 U.S.C. 1012(b))(the "Act"), which preempts federal laws that "invalidate, impair, or supersede" state laws regulating insurance, bars Plaintiff from pursuing his RICO claims in this instance. The Act provides, in pertinent part, that:

> No Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifical-

ly relates to the business of insurance * * *.

The test for determining when the Act preempts application of federal law requires consideration of whether: 1) the federal statute at issue specifically relates to the business of insurance; 2) the state statute at issue was enacted for the specific purpose of regulating the business of insurance within the state; and 3) application of the federal statute in the case at hand would "invalidate, impair or supersede" the state statute. *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 501, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). Here, the parties concede that the first two elements have been met and that the sole issue before the court is whether application of the federal RICO statutes to Plaintiff's claims would "invalidate, impair or supersede" the state statute.

In Oregon, insurance companies are governed by the Oregon Insurance Code, which is set forth in Chapter 731, 732, 734, 735, 737, 742, 743, 744, 746, 748 and 750 of the Oregon Revised Statutes (the "Insurance Code"). The Insurance Code specifically refers to the Act and provides that it "shall regulate the business of insurance and every person engaged therein in accordance with the intent of Congress as expressed in the Act." O.R.S. 731.012. The Insurance Code further provides that it "shall be liberally construed and shall be administered and enforced by the Director of the Department of Consumer and Business Services* * *." O.R.S. 731.016. The Insurance Code does not provide a private right of action. It provides for enforcement of the provisions of the Insurance Code by the Director of the Department of Consumer and Business Services ("Director") and for civil penalties in the amount of $1,000, $10,000 or the amount by which a violator profited in an improper transaction. The intent of the Oregon leg-

islature to vest sole control over unlawful insurance practices to the Director is evidenced by: 1) the language of the Insurance Code; 2) the specific exclusion of "insurance" from the definition of "real estate, goods and services" subject to the provision of Oregon's Unlawful Trade Practices Act (O.R.S.646.605); and 3) the failure to provide any private right of action against insurance companies for fraud or other improper activities.

Plaintiff argues that a private right of action for insurance fraud exists under Oregon's Racketeering Statute set forth in O.R.S. 166.715 and 166.735. However, this private right of action is limited to situations in which the defendants have already been convicted of a crime. It is not a right of action available to Plaintiff at this point, nor is it a cause of action that would normally be associated with insurance practices. Plaintiff also argues that a number of common law causes of action exist and that the court should consider them in determining whether RICO is preempted by the Act in this instance.

The Act refers to any "law enacted by any state for the purpose of regulating the business of insurance." The common-law actions relied on by Plaintiff were not "enacted" by the State of Oregon and would appear to irrelevant to the issue before the court. However, Plaintiff contends that a number of other states have considered common-law actions in determining whether the Act preempts RICO claims for insurance fraud.

A careful reading of the cases relied on by Plaintiff establishes that in each instance, the state had statutorily authorized at least one private right of action against an insurance company. In *Humana Inc. v. Forsyth*, 525 U.S. 299, 312, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999), the Court noted that Nevada's Unfair Insurance Practices Act authorized a private right of

action and damages for a number of unfair insurance practices. See also *BancOklahoma Mortgage Corp. v. Capital Title Company, Inc.*, 194 F.3d 1089, 1099 (10th Cir.1999). In *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 169 (3rd Cir.2001), the court found that Pennsylvania state courts "have allowed private actions under state common and statutory law." See also, *Sabo v. Metropolitan Life Insurance Company*, 137 F.3d 185, 192 fn. 4 (3rd Cir.1998). Similarly, a North Carolina District Court relied on the existence of statutes that allow a private remedy for those injured by illegal kickbacks under the state Unfair and Deceptive Trade Practices Act in finding that the Act did not preempt federal law. *Mullinax v. Radian Guaranty Inc.*, 199 F.Supp.2d 311, 322 (M.D.N.C.2002).

In absence of clear precedent to the contrary, this court believes that the absence of statutorily authorized private rights of action for insurance fraud preempt the application of RICO under the Act despite Plaintiff's assertion that the Oregon courts have authorized common-law actions for the same scenario. However, even assuming that Plaintiff's assertion is correct, the court finds the common-law causes of action are sufficiently restricted to evidence the state's intent to limit first-party insurance actions based on a failure to pay benefits to a contract claim with contract damages.

Plaintiff argues that three common-law rights of action exist which allow an individual to sue an insurance company for insurance fraud and recover tort and/or punitive damages which far exceed RICO's treble damages. First, Plaintiff claims that a right of action for insurance bad faith, negligence or negligent misrepresentation exists when an insurance company refuses to pay claims. Plaintiff acknowledges that this action is available only when a special relationship exists between

the plaintiff and the insurer. The Oregon Supreme Court has held that:

> In cases involving the insurer's duty to pay under policies for theft, fire, health, disability or life insurance, the unique relationship which gives rise to the special duty of liability insurers to attempt to settle within their policy limits does not arise.

*Santilli v. State Farm Life Ins. Co.*, 278 Or. 53, 62, 562 P.2d 965 (1977). It is evident under Oregon law that Plaintiff has no viable claim for tort damages based on this common-law claim. This is supported by the fact that Plaintiff has failed to allege this cause of action in his complaint.

Next, Plaintiff asserts the existence of a common-law action for fraud and deceit which would include claims for fraud committed by insurance companies in collecting premiums with no intent to pay claims under the policies. Plaintiff has in fact asserted such claims in the Complaint.[1] The court has addressed such claims below and determined that they are not viable in this instance. And while Plaintiff refers to a few cases in which other courts considered fraud claims against an insurance company in the context of a first party claim for benefits, there are no cases where the State of Oregon has held that such a claim exists. In light of the clear legislative statement that only the Director shall regulate improper insurance practices and the fact that fraud in the inducement would clearly qualify as an improper practice, coupled with the absence of any Oregon state court recognizing the existence of a fraud claim against an insurance company in this context, the court is loath to recognize the existence of such an action at this time.

Finally, Plaintiff notes the existence of a common-law interference with contract claim that would apply in a scenario where a third party intentionally interferes with the claims process resulting in a wrongful denial of an insurance claim. This claim may well exist but it has no bearing to the case before the court and is clearly not evidence that Plaintiff has a viable common-law claim for insurance fraud based on the facts at hand. The claim requires action by an unrelated third party and would not necessarily impugn the actions of the insurance company in denying the claim.

The Oregon legislature sent a clear message that it intended to prevent individuals from pursuing actions against insurance companies for violations of the Insurance Code and Oregon's Unlawful Trade Practices Act. Such violations were to be actionable only by the Director and would result only in fines payable to the state. The Oregon courts recognized and honored this clear legislative statement by routinely limiting first party insurance claims for failure to abide by the terms of the policy to breach of contract claims with contractual damages as the sole remedy. This scheme, announced by the legislature and supported by the courts, would clearly be impaired were the court to allow Plaintiff to pursue his RICO claims and recover treble damages in this instance. The court finds that Plaintiff's RICO claims are preempted under the Act and that Plaintiff's First and Second Claims for Relief must be dismissed.

### Third Claim for Relief/Count Two— Breach of Implied Provisions of the Contract

■ Plaintiff alleges that Defendants' "bad faith refusal to pay Plaintiff his disability benefits" resulted in a breach of the implied covenant of good faith and fair dealing. The Oregon courts have held long held that an obligation of good faith

---

1. Plaintiff's Fourth Claim for Relief is for Common Law Fraud by Concealment and his Fifth Claim for Relief for Common Law Fraud by Active Management.

exists in the performance and enforcement of every contract. *Best v. United States National Bank of Oregon,* 303 Or. 557, 561, 739 P.2d 554 (1987). However, the courts also limited the damages to be awarded for such a claim in this context to breach of contract damages. See *Farris v. United States Fidelity and Guaranty Co.,* 284 Or. 453, 587 P.2d 1015 (1978). Plaintiff concedes such a limitation on this claim. Accordingly, the court will allow Plaintiff's claim for breach of implied provisions of the contract to go forward but limits Plaintiff's damages to those recoverable under a contract claim.

**Third Claim for Relief/Count Three—Estoppel**

■ In support of Count Three of his Third Claim for Relief, Plaintiff asserts that Defendants should be "estopped from denying that Plaintiff is entitled to disability payments under the Policy and that Plaintiff is totally disabled within the meaning of the Policy until they perform a good faith evaluation of his claim that is consistent with the terms of the Policy* * *." Plaintiff bases this claim on Defendants alleged misrepresentation/omissions, discussed in detail below. This is clearly a claim for recovery of benefits by a first party insured under an insurance contract. As noted above, the Oregon courts have specifically and consistently held that "an insurers' bad faith refusal to pay policy benefits to its insured sounds in contract * * *." *Farris v. United States Fidelity and Guaranty Co.,* 284 Or. 453, 587 P.2d 1015 (1978). Plaintiff is limited to the contract claims asserted in Counts One and Two of the Complaint and is not able to pursue his claim for estoppel under Oregon law.

**Fourth Claim for Relief—Common Law Fraud by Concealment**

■ Plaintiff alleges that Defendants fraudulently induced him to renew the Policy by concealing the fact that they had adopted a new claims handling procedure which targeted policies similar to Plaintiffs for denial of benefits. The elements of a fraud claim are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) intent that the representation be acted upon in a manner reasonably contemplated; (6) the hearer's ignorance of the falsity and conversely, reasonable reliance on its truth; and (7) damage. *Webb v. Clark,* 274 Or. 387, 391, 546 P.2d 1078 (1976).

■ Although the existence of a "special relationship" is generally not required to sustain an action for fraud premised upon misrepresentations, this rule is modified when the claim is premised upon an omission. In Oregon, actionable fraud clearly may be premised upon the concealment of a material fact, *Musgrave v. Lucas,* 193 Or. 401, 410, 238 P.2d 780 (1951), but only if there is a *duty* to speak or a case of active concealment. *Paul v. Kelley,* 42 Or.App. 61, 65–66, 599 P.2d 1236 (1979). Plaintiff's fraud case is premised upon *omissions*—that Defendants failed to disclose that it had changed its internal mechanism for handling disability claims for professionals who had purchase "own occupation" disability policies. However, the Oregon court has clearly and consistently held that an insurance company has no special relationship with a first party insured in the context of a failure to pay benefits and that an action to recover such benefits is limited to a claim on the contract. *Santilli v. State Farm Life Ins. Co.,* 278 Or. 53, 562 P.2d 965 (1977). Applying this policy to the fraud context, the court finds that Defendants had no duty to inform Plaintiff of the alleged change in its internal policy and, therefore, is not liable for fraud by concealment.

Additionally, the court questions whether such omissions would be considered ma-

terial when there is no allegation that Plaintiff was aware of Defendants' internal claims-handling procedure or that he relied on such information prior to his purchase of the Policy. At the time Plaintiff purchased the Policy, he was provided with a copy of the Policy as well as a summary of the Policy that set forth the coverage to which Plaintiff was entitled. Plaintiff does not allege that the terms of the Policy changed in any material way during the pendency of the Policy. In other words, he remained entitled to the same coverage under the Policy from the date he purchased the Policy to the date he filed his claim for disability benefits. Plaintiff alleges only that Defendants' claim procedure, or the way in which they handled claims for benefits under their policies, changed. In the absence of an allegation that Plaintiff knew what the original claims procedure was, the fact that such procedure changed would likely not be material to Plaintiff's renewal of the Policy. If Plaintiff was willing to purchase the Policy without relying on Defendants' claims procedure, he clearly did not rely on the continuation of such claims procedure in renewing the Policy.

Defendants did not have a duty to disclose a change in their claims procedure to Plaintiff and therefore, are not liable for a failure to disclose such change to Plaintiff. Additionally, Plaintiff fails to allege facts that he relied on such claims procedure in the purchase of the Policy which reveals that the claims procedure, or any change to the claims procedure, was material to his purchase or renewal of the Policy. Plaintiff fails to state a viable claim for fraud by concealment and his Fourth Claim for Relief should be dismissed.

**Fifth Claim for Relief—Fraud by Active Misrepresentation**

Here, Plaintiff claims that updates to the Policy forwarded to Plaintiff during the pendency of the Policy were affirmative misrepresentations that Defendant would pay benefits according to the terms of the Policy. Again, Plaintiff is basing this claim on the fact that Defendants allegedly changed their claims procedure after the issuance of the Policy. As noted above, Plaintiff does not allege that he was advised of or relied on the claims procedure in existence at the time he purchased the Policy. Accordingly, such information was clearly not material to Plaintiff's purchase of the Policy and would not be relied upon by Plaintiff in his renewal of the Policy. Additionally, the updates to the Policy are not alleged to be false and are not representations with regard to Defendants' underlying claims procedure. Plaintiff merely assumed that such updates were representations that Plaintiff's claim for benefits would proceed smoothly and in accordance with his wishes. Plaintiff fails to state a claim for relief for fraud by active misrepresentation.

**Sixth Claim for Relief—Tennessee Consumer Protection Act**

Plaintiff has alleged a claim for relief under the Tennessee Act and seeks treble damages for that claim. Defendants contend that, under Oregon's choice of law provisions, Oregon law applies to Plaintiff's claims.

Federal courts exercising diversity jurisdiction apply the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Oregon law, the court must determine whether there is an actual conflict of law on the disputed issue; if not, Oregon law applies. *Erwin v. Thomas*, 264 Or. 454, 457, 506 P.2d 494 (1973).

The court has already held that Oregon limits first party claims against an insur-

ance company for failure to pay benefits to contract claims with contract damages. Additionally, Oregon has specifically exempted insurance contracts from Oregon's Unlawful Trade Practices Act. The Tennessee Act allows insurance companies to be sued under the Tennessee Act and authorizes the recover of treble damages for violation of the Tennessee Act. There is clearly a conflict of interest between the law of the State of Oregon and the law of the State of Tennessee with respect to this action.

■ Where a conflict in the law exists, the court must then determine what laws will apply to the specific action before the court. In contract actions, Oregon courts apply the law of the state which has the most significant relationship to the parties and to the transaction. *Citizens First Bank v. Intercontinental Express, Inc.*, 77 Or.App. 655, 657, 713 P.2d 1097 (1986); see also *Manz v. Continental Am. Life Ins. Co.*, 117 Or.App. 78, 80, 843 P.2d 480 (1992), modified on other grounds by 119 Or.App. 31, 849 P.2d 549 (1993). Where both states have roughly equal contacts with the parties and the transaction, Oregon courts weigh the states' fundamental interests in the transaction, and apply Oregon law when the interests of neither jurisdiction are clearly more important than those of the other. *Straight Grain Builders v. Track N' Trail*, 93 Or.App. 86, 91–92, 760 P.2d 1350 (1988), review denied, 307 Or. 246, 767 P.2d 76 (1988), citing *Lilienthal v. Kaufman*, 239 Or. 1, 16, 395 P.2d 543 (1964).

When evaluating significant contacts, the court must look to those contacts "that show that the state has some interest in having its law apply to the dispute." *Manz*, 117 Or.App. at 83, 843 P.2d 480. Although the place of contracting is no longer determinative, it remains an important factor. See, e.g., *St. Paul Fire &*

*Marine Ins. Co., Inc. v. McCormick & Baxter Creosoting Co.*, 126 Or.App. 689, 696–97, 870 P.2d 260, modified on other grounds by 128 Or.App. 234, 875 P.2d 537 (1994), review granted, 322 Or. 362, 907 P.2d 248 (1995) ("*McCormick & Baxter*"); *Industrial Indem. Co. v. Pacific Maritime Ass'n*, 97 Or.App. 676, 679, 777 P.2d 1385 (1989).

■ While Plaintiff is now asserting that the Tennessee Act should apply to this action, in its brief before the Ninth Circuit, Plaintiff argued to the contrary. In support of its argument that Oregon law should apply, Plaintiff wrote that:

Each of the factors favor an Oregon connection for issues that are not controlled by federal law (such as contract matters). The place of contracting and negotiation was in Oregon, the place of performance (*i.e.* payment of claims) would take place in Oregon, and the subject matter of the contract (Mr. Pearson, his occupation, his condition and his treatment) is in Oregon. The only factor outside Oregon is Provident's residence in Tennessee.

Plaintiff now argues that the fact Defendants' home office is in Tennessee creates significant contacts with the parties and the transaction to justify application of Tennessee law. The court disagrees with this new position of Plaintiff and finds that Oregon has the most significant contacts with the transaction and Oregon law should apply in this instance.

Even assuming that Plaintiff has established that both states have significant contacts with the parties and the transaction, the court must then look to the states' relative interests in the action. Plaintiff asserts that Tennessee courts have an interest in regulating how insurance companies do business in their jurisdiction. Similarly, Oregon has a "substantial interest in the regulation of insurance contracts and in determining the rights and liabilities of

the parties who enter into those contracts in Oregon." *McCormick & Baxter*, 126 Or.App. at 697, 870 P.2d 260.

When both states have an interest in the action and neither's interest clearly predominates, Oregon law mandates that the interests of Oregon prevail. *Lilienthal*, 239 Or. at 16, 395 P.2d 543. Thus, Oregon law controls this action and Plaintiff's claim under the Tennessee Act must be dismissed.

### Conclusion

Defendants' motion to dismiss (# 66) is GRANTED with regard to his First, Second, Fourth, Fifth and Sixth Claims for Relief as well as Count Three of his Third Claim for Relief and DENIED with regard to Unum and Count Two of his Third Claim for Relief. Plaintiff's sole remaining claims are Count One and Two of his Third Claim for Relief and he is limited to the recovery of contract damages under these claims.